THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE TRUSTEES OF THE MASONIC HALL AND ASYLUM FUND, Relator, *v.* DAVID FARRELL and Others, Constituting the Board of Assessors of the Town of Forrestport, Oneida County, N. Y., Respondents.

Supreme Court, Oneida County, July 15, 1927.

Taxation — exemption — assessment against Masonic Home camp — camp is used exclusively as adjunct to Masonic Home which is maintained by Grand Lodge — Grand Lodge is organized exclusively for charitable, hospital and educational purposes within meaning of Tax Law, § 4, subd. 7 — camp property is exempt from taxation and assessment is illegal.

The society of Free and Accepted Masons, an unincorporated fraternity, the government of which, so far as New York State is concerned, is vested in the Grand Lodge, is organized exclusively for charitable, hospital and educational purposes within the meaning of subdivision 7 of section 4 of the Tax Law, and property known as the Masonic Home Camp which, since its acquisition by said Lodge has been and is used solely and exclusively for the carrying out thereupon of one or more of such purposes as an adjunct or addition to the Masonic Home at Utica for the inmates thereof, a large number of whom are children, is exempt from taxation; an assessment placed thereupon in the assessment rolls of the town of Forrestport, Oneida county, therefore, must be stricken therefrom, since it is illegal.

Since it does not appear that the assessors have acted with gross negligence, bad faith or malice in making the assessment, no costs are allowed against them.

CERTIORARI to review tax assessment.

*Clarence Stetson* [*John A. Dutton* of counsel], for the relator.

*Kernan & Kernan,* for the respondents.

CHENEY, J.  Relator commenced this proceeding under the Tax Law to review by certiorari the determination of the board of assessors of the town of Forrestport, Oneida county, N. Y., refusing exemption from taxation of the real property of the relator in said town, commonly called the Masonic Home Camp, and placing an assessment thereupon in the assessment rolls of the town in the sum of $53,050.  Upon the return of the writ, it appearing that testimony was required for the proper disposition of the matter, an order of reference was made to take the same and report to the court.  A hearing was had before the referee, and his report is now before the court for confirmation.

From this report it appears that the relator was originally incorporated by special act (Laws of 1864, chap. 272) and the objects of its incorporation as stated therein were: " to build and maintain a masonic hall in the city of New York, for the meetings of the grand lodge or general assembly of masons, and for the accommodation of other masonic bodies or associations; and out of the funds derived from the rent or income thereof, or other sources, to build, establish and maintain an asylum or asylums, school or schools, for the free education of the children of masons, and for the relief of worthy and indigent masons, their widows and orphans."  This act of incorporation was severally amended by chapter 503, Laws of 1873; chapter 350, Laws of 1877; chapter 55, Laws of 1885; chapter 105, Laws of 1890, and chapter 666, Laws of 1898, and was consolidated, revised and amended generally by chapter 264, Laws of 1923, under which the trustees are now operating.  The objects of the corporation, as stated in section 4 of said act, are as follows: " To build and maintain a masonic hall or temple in the city of New York for the meetings and accommodation of the Grand Lodge or General Assembly of Free and Accepted Masons of the State of New York, and its officers, and for the accommodation of other masonic bodies, and out of the funds derived from the rent or income thereof, and the funds derived by said corporation from all other sources which may be applicable thereto, to build, establish and maintain in the state of New York, an asylum or asylums, a home or homes, with hospital accommodations, a school or schools, for the relief, support and care of worthy and indigent masons, and worthy and indigent wives, widows and orphans (half or whole), of masons, and for the free education of children of masons."

The history of the occurrence out of which the formation of this corporation arose is as follows: The society of Free and Accepted Masons is a voluntary, unincorporated fraternity, quite generally distributed throughout the world.  Its government, so far as the State of New York is concerned, is vested in the Grand Lodge,

which has had a continuous existence for upwards of 146 years and has jurisdiction over about 994 Masonic lodges chartered by it and to which the members, known as Masons, belong. . About the year 1845 a movement was started in the Grand Lodge for the raising of a fund by voluntary contributions for the founding of an asylum or home for the worthy and indigent members of the fraternity, their widows and orphans. Such fund was established and gradually accumulated under a committee of the Grand Lodge until the incorporation of the relator in 1864, when the fund was turned over to it. The theory of the incorporation evidently was that the rentals and income of the hall to be erected for the accommodation of the Grand Lodge and the various subordinate lodges in the city of New York would produce sufficient income to maintain the asylum or home. Accordingly in 1869 the original Masonic Hall was erected in New York and was occupied by the Grand Lodge and subordinate lodges which paid a rental therefor. In 1889 a large tract of land was purchased in and adjacent to Utica, upon which was erected the Masonic Home, which was opened in 1893, for the reception, relief, support and care of worthy and indigent Masons and worthy and indigent wives, widows and orphans of Masons, and since that time the property, with its improvements and additions, including a large hospital, has been maintained and devoted exclusively to that purpose. The particular property in question here was acquired in 1924 and 1925, and has always been used and is now used solely and exclusively as an adjunct or addition to the Masonic Home at Utica for a summer camp for the inmates of the home, a large number of whom are children, in more healthful and comfortable surroundings and away from the routine of institutional life.

The original Masonic Hall in New York has been torn down and upon the site thereof and additional property adjacent thereto there has been erected a large building, wherein are accommodations for the meeting place for the Grand Lodge and its officers and committees, and also for various of the Masonic lodges, which pay a rental therefor; and a considerable portion of the building is rented for commercial purposes. The total net income from this property is devoted and always has been devoted to maintenance of the home at Utica and the carrying out of the charitable purposes for which the relator was formed. That net income has never been sufficient to pay the maintenance of the home and hospital at Utica, since the same has been in operation, and the deficiency is made up by gifts, legacies, bequests and annual Grand Lodge dues and fees from the constituent members of Masonic lodges under the jurisdiction of the Grand Lodge.

Relator bases its claim for exemption upon subdivision 7, section 4 of the Tax Law (as amd. by Laws of 1924, chap. 489), which, eliminating the portions not applicable, reads as follows: " The real property of a corporation or association organized exclusively for   *   *   *   charitable, benevolent   *   *   *   purposes, and used exclusively for carrying out thereupon one or more of such purposes   *   *   *   shall be exempt from taxation. But no such corporation or association shall be entitled to any such exemption if any officer, member or employee shall receive or may be lawfully entitled to receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes, or as proper beneficiaries of its strictly charitable purposes; or if the organization thereof for any such avowed purposes be a guise or pretense for directly or indirectly making any other pecuniary profit for such corporation or association, or for any of its members or employees, or if it be not in good faith organized and conducted exclusively for one or more of such purposes."

While it is true that the general rule of construction of statutes exempting property from taxation is that they are to be strictly construed against those claiming the exemption, it should not be the policy of the courts to give to the language of such statutes so literal and technical an interpretation as would defeat or nullify the intention of the Legislature. The policy of exemption from taxation is a legislative one, and while such exemptions exist by virtue of statute, the courts should not be over astute, when applying the statute to a particular case, to give to the language used such an interpretation as to deny an exemption which it was the plain purpose of the Legislature to grant. Formerly it was within the power of the Legislature to grant specific exemptions to designated beneficiaries, and in 1871, an act was passed (Chap. 249) granting such exemption to the real estate of the relator, and such exemption was continued in precisely the same language in Laws of 1882, chapter 410, section 824. This statute has never been expressly repealed, but it would probably be held to have been impliedly repealed by the adoption of the Tax Law in 1896. (*Pratt Institute* v. *City of New York*, 183 N. Y. 151; *Matter of Huntington*, 168 id. 399; *People ex rel. Troy Masonic Hall Association* v. *Byrne*, 125 Misc. 212.) Since the adoption of the amendment of 1901, the Legislature has been without power to grant special exemptions from taxation, but has been restricted to passing general laws covering the matter. (Const. art. 3, § 18.)

This the Legislature has done by the enactment of section 4 of the Tax Law (Laws of 1909, chap. 62) which declares that the

following property shall be exempt from taxation, followed by a specific enumeration included in which is subdivision 7, previously quoted. By this subdivision the policy of the Legislature is declared that all the real property of a corporation organized for, among others, charitable, hospital or educational purposes, and used exclusively for the carrying out thereupon one or more of such purposes, should be exempt from taxation. In determining the interpretation of a statute " the policy of the law ' must be considered and should have great weight.' " (*Matter of Moses*, 138 App. Div. 525.) What this policy was is stated in *Matter of Huntington* (168 N. Y. 399) as follows: " The organized charities and benevolent agencies which actually relieve human misery, and labor in unselfish devotion to improve the moral and physical condition of mankind, are alike the fruits and aids of good government, and to exempt their property — usually the gifts of the benevolent — from the burdens of taxation is scarcely less the duty than the privilege of the enlightened legislator. Clearly this exemption should be placed upon broad, equitable grounds, quite above the injurious imputations sometimes resulting from individual or special exemptions. We suppose this spirit prevailed in framing the exemptions relating to these charities and benevolent agencies." In discussing this question of policy, Judge VANN, as referee, in an opinion adopted by the court in *People ex rel. Walcott v. Parker* (84 Misc. 534, 547), used this language: " While taxation is the rule and exemption the exception and the burden of showing exemption rests on the one claiming it, the statute regulating the subject should be read in the light of the policy of the State of New York, established early in its history and increasing in liberality as time has passed, to encourage education. The State expends much money each year for this purpose, and, in further promotion of its broad policy, exempts from taxation the property of such associations, corporate or voluntary, as are organized exclusively for, among others, educational or charitable purposes, and used exclusively for one or more of those purposes."

The respondents claim that the relator cannot claim exemption under this provision of the statute because it is not organized exclusively for charitable, hospital or educational purposes, and point to the other powers of the corporation, notably the power to build and maintain the hall in New York, to bear out that contention. I am not convinced by the argument. The legislative history of the formation of this corporation points irresistibly to the conclusion that the sole and ultimate aim and object for the organization of this corporation was the establishment and maintenance of an asylum or home wherein the worthy and indigent

members of the Masonic fraternity, their widows and orphans, might find refuge, and be maintained and educated through the benevolence of the fraternity; and that all of the other powers given to the corporation were merely subsidiary to its main purpose, a means to accomplish the end for which the corporation was brought into being. By the express terms of the original act of incorporation the committee of the Grand Lodge which had in charge the fund being raised to build and maintain this asylum and home was created a body politic and corporate and authorized to build and maintain the same. That ultimate object was the only reason for the corporation, and the fact that it was given from time to time additional powers that it might more adequately accomplish its primary purpose cannot form the basis for an adjudication that it was not organized exclusively for this charitable and educational purpose.

A situation somewhat similar to this was presented in the case of *National Navy Club* v. *City of New York* (122 Misc. 89), where the court held that the main and controlling objects for the corporation's existence and organization are " none the less exclusive, in the statutory sense, because they can only be accomplished by subsidiary activities," the court in this connection saying: " It is true that plaintiff's charter refers to other objects but clearly they are merely the means or methods of carrying out the ultimate purpose of its existence. Strictly speaking, it would not be necessary to disclose such subsidiary functions in the certificate of incorporation. Mention of them is a precautionary measure taken by a careful lawyer, that the accomplishment of the purposes for which plaintiff is organized, maintained and conducted may not be hindered by any question as to the right to undertake subsidiary activities necessary to the accomplishment of its true ends. Plaintiff's charter authorizes it to employ means and methods of carrying out its main object not because they are additional to the main purpose, but because they are, as means and methods, necessary for its accomplishment. Their statement is merely descriptive of the main purpose. They do not change the ultimate object, the one exclusive object for which plaintiff exists, but merely pave the way for carrying it on."

That the Legislature, in framing this statute intended to so describe in general terms and exempt the property belonging to this corporation, not only that used exclusively for the carrying out thereon its charitable and educational purposes, but also that from which the revenue for its maintenance was derived, is evidenced by the further language of subdivision 7, section 4 of the Tax Law (as amd. by Laws of 1924, chap. 489) as follows: " And further

provided that the real property of any fraternal corporation, association or body created to build and maintain a building or buildings for its meeting or meetings of the general assembly of its members, or subordinate bodies of such fraternity and for the accommodation of other fraternal bodies or associations, the entire net income of which real property is exclusively applied or to be used to build, furnish and maintain an asylum or asylums, a home or homes, a school or schools, for the free education or relief of the members of such fraternity, or for the relief, support and care of worthy and indigent members of the fraternity, their wives, widows and orphans, shall be exempt from taxation."

That the Legislature so intended, and desired to make clear that there was no intent to repeal by implication the exemptions so granted is further evidenced by the following language in section 1, chapter 264, Laws of 1923, consolidating, revising and amending generally the several acts relating to the trustees of the Masonic Hall and Asylum Fund: " with all of the powers and exemptions heretofore and herein conferred upon it, and with all the powers and exemptions conferred generally upon corporations by the general corporations law, and all other general laws of the state, in so far as the same may be applicable to said corporation and not inconsistent with the provisions of this act, including the exemptions heretofore conferred upon it by its special acts of incorporation, and by subdivision seven of section four of chapter sixty-two of the laws of nineteen hundred and nine, known as the tax law."   By reason of the constitutional provision above cited, this cannot be held to be a valid grant of exemption, but may be regarded as a legislative interpretation of the effect of the language used in the Tax Law.   In addition there is a judicial interpretation of it in *People ex rel. Syracuse Masonic Temple* v. *Ostrander* (105 Misc. 405) which although obiter is entitled to consideration.   In speaking of this corporation the court said: " That corporation has dedicated the use of its property to the purpose of maintaining the Masonic Home.   It is exempt from taxation; and apparently it has been the purpose of the legislature and the Tax Law to make general the law exempting a body engaged in such a charitable enterprise, for the language of the present statute relating to exemptions follows practically verbatim the statute just quoted."

I am, therefore, constrained to hold as a matter of law that the relator is a corporation organized exclusively for charitable, hospital and educational purposes within the meaning of subdivision 7 of section 4 of the Tax Law; and as the referee has found as a matter of fact that the property covered by the assessment in question here is exclusively used for the carrying out thereupon of one or

more of such purposes, and that no facts exist which would bring it within any of the exceptions mentioned in the statute, I find that such property is exempt from taxation, and the assessment thereon is illegal.

An order may be entered striking the assessment complained of from the roll. As it does not appear that the assessors have acted with gross negligence, bad faith or with malice in making the assessment, no costs are awarded against them.