159 P.2d 312

**SANTA FE LODGE NO. 460, B. P. O. E., v. EMPLOYMENT SECURITY COM-MISSION.**

No. 4877.

Supreme Court of New Mexico.

May 24, 1945.

A..M. Frazier, of Albuquerque, for appellant.

Manuel A. Sanchez, of Santa Fe, for appellee.

BRICE, Justice.

The question is whether the appellee is liable to the payment of the contribution imposed by the Unemployment Compensation Law of New Mexico. 1941 Comp. § 57-801 et seq.

The findings made by the Court, material to a decision of this question, are as follows:

The appellee is a corporation organized and existing under the laws of New Mexico and the appellant is the administrator of the Unemployment Compensation Law of the state.

The Articles of Incorporation of appellee state the objects of its incorporation as follows:

"The objects for which the said corporation is formed are to practice benevolence and charity according to the constitution and by-laws, rules and regulations of the Grand Lodge of the Benevolent and Protective Order of Elks, and the constitution and by-laws of Santa Fe Lodge No. 460 as it now exists; to buy, sell, take, receive, hold and lease and otherwise dispose of such real or personal property as may pertain to the purposes of the said organization."

The Constitution of the Grand Lodge of the Benevolent and Protective Order of Elks provides that the purposes of its organization are as follows:

"To inculcate the principles of Charity, Justice, Brotherly Love and Fidelity; to promote the welfare and enhance the happiness of its members; to quicken the spirit of American patriotism; to cultivate good fellowship; to perpetuate itself as

a fraternal organization, and to provide for its government, * * *."

The Constitution and the Grand Lodge statutes of the organization provide for its government, the transaction of its business; and for the organization, institution, management and control of subordinate lodges. The appellee herein is a subordinate lodge of the Benevolent and Protective Order of Elks.

The Constitution of the appellee, Santa Fe Lodge No. 460, provides that:

"To inculcate the principles of Charity, Justice, Brotherly Love and Fidelity; to promote the welfare and enhance the happiness of its members; to quicken the spirit of American patriotism; to cultivate good fellowship; to perpetuate itself as a fraternal organization, and to provide for its government, the Benevolent and Protective Order of Elks of the United States of America, ordains this Constitution."

The property of the appellee consists of its home in Santa Fe, which is used exclusively by its members, for meetings of the Order, social meetings of its members and for carrying out the purposes enumerated in its Constitution.

The corporation operates a bar in its home, dispensing liquors and refreshments to its members and invitees. It provides a reading room, card room, and billiard tables for the enjoyment of its members. The prices of liquors are about those paid in other places in Santa Fe where liquors are dispensed.

Since January 1, 1939, appellee has dispensed charity to its members and the public at large, of about $4000 per annum. During the last six years it has expended for charity about $25,000, appproximately $750 of which was dispensed to members of the appellee order, their widows and orphans; the balance of over $24,000 was dispensed as charity to the public at large. The expense of operating appellee's home is about $4000 a year, of which an average of about $1600 per annum is paid as annual dues and initiation fees by members. The remainder of the net income of the appellee is from profits made from operation of the bar, and its annual celebrations.

The appellee has employed three persons since January 1, 1939, at the following fixed salaries: Secretary $25 per month; steward $100 per month; janitor $25 per month. No part of the net earnings of appellee inures to the benefit of any individual. There are no private shareholders in the organization.

The Court concluded as follows:

"Plaintiff corporation is a corporation organized and operated exclusively for charitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual and that the services performed in the employment of the plaintiff corporation are not included in the term 'Employment' as used in the Unemployment Compensation Law of New Mexico; and that at all times material to this cause of action the plaintiff corporation has been operated exclusively for

152

charitable purposes, and that no part of the net earnings of the said corporation have inured to the benefit of any private shareholder or individual.

"(a) The practice of benevolence, (b) the inculcation of the principles of justice, brotherly love, and fidelity, (c) the promotion of the welfare and enhancement of the happiness of the members of plaintiff organization, (d) the quickening of the spirit of American patriotism, and (e) the cultivation of good fellowship, all of which are also declared as purposes of plaintiff organization, is charity in its most perfect form; that the perpetuation of plaintiff as a fraternal organization and provision for its government, also declared as plaintiff's purposes, are necessary for plaintiff's existence to perform its charitable practices. * * *

"That the plaintiff and its employees are exempt and excluded from the provisions of the Unemployment Compensation Law of New Mexico."

▊ Some questions are raised that we do not deem it necessary to consider. It is probably true that with slight exception, the findings listed as "findings of fact" are evidentiary facts only, and are surplusage. But among the conclusions of law the principal ultimate fact necessary to support the judgment appears, to-wit: "That the plaintiff (appellee) corporation has been operated exclusively for charitable purposes, and that no part of its net earnings has inured to the benefit of any private shareholder or individual." This finding will be considered by us, notwithstanding it ap-

pears under the wrong caption, and we will proceed to determine whether it is supported by substantial evidence.

The statute provides that persons and corporations organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual, are exempt from the payment of the contributions sought to be collected. Appellee asserts that it is organized and operated exclusively for charitable purposes, and that no part of the net earnings of which inures to the benefit of any private shareholder or individual, and therefore it is among those exempt from such payments. If appellee has established this fact by substantial evidence, then the judgment of the trial court should be affirmed.

While the question submitted is one of first impression here, a question involving the liability of such corporations to the payment of general taxes under Section 3 of Article 8 of the state Constitution is not new; that provision is as follows:

"Property of the United States, the state or all counties, towns, cities and school districts, and other municipal corporations, public libraries, community ditches and all laterals thereof, all church property, all property used for educational or charitable purposes * * * shall be exempt from taxation."

It was determined in Temple Lodge No. 6, A. F. & A. M. v. Tierney, 37 N.M. 178,

20 P.2d 280, 284, that Temple Lodge, a Masonic corporation, was not subject to general taxes because it was organized for educational and charitable purposes.

The fact that the constitution did not provide that the exemption applied to property used exclusively for charitable purposes was referred to in distinguishing that case from others mentioned in the opinion, and it was observed that the law of New Mexico prior to the adoption of the constitution did provide that the exemption should apply to such corporations and institutions "devoted exclusively to the appropriate objects of such institutions." In passing upon the contention that the constitution should be construed to mean that the exemption applied only to those corporations used exclusively for charitable and educational purposes, etc., we stated:

"It should be noted at the outset that few states have constitutional or statutory provisions more favorable to a claim of exemption under facts such as we have here, and that most states have less liberally provided.

"Educational or charitable use, or ownership by educational or charitable organizations, are common grounds of exemption. But generally some qualifying language has been employed, such as 'exclusively used,' 'devoted to the sole use,' 'public charity,' or 'purely public charity.'

"Where such modifying expressions have been employed, judicial opinion appears divided, though a weight of authority could perhaps be claimed in favor of exemption. But where the controlling statutory or constitutional provision approaches ours in liberality, and upon similar facts, there can scarcely be said to be a difference of view."

The statute to be construed is an exact copy of the Federal statute providing for exemptions from contributions to the National Social Security Act, which in turn is an exact copy of the exemption provision of the Federal Income Tax statutes.

In Jones v. Better Business Bureau, 123 F.2d 767, 769, the Tenth Circuit Court of Appeals said of the Federal statute:

"While the general rule is that tax-exempt statutes are to be construed strictly in favor of the government, the rule does not apply to exemption statutes of the character here involved. Such a statute should be liberally construed so as to further rather than hinder its beneficent purpose. The purpose of this exemption is to encourage religious, charitable, scientific, literary, and educational associations not operating for the profit of any private shareholder or individual."

This seems to have been the view of this court, stated in Temple Lodge v. Tierney, supra, as follows:

"But where the exemption is for the promotion of religious, educational, charitable, or similar objects, deemed beneficial to the state, and to afford a quid pro quo, an exception has frequently been declared. For expositions of this doctrine and collections of authority, see Horton v. Colorado Springs [Masonic] Bldg. Society [64 Colo. 529, 173 P. 61, L.R.A.1918E, 966]; Cum-

berland Lodge v. Nashville [127 Tenn. 248, 154 S.W. 1141]; Salt Lake Lodge v. Groesbeck [40 Utah 1, 120 P. 192, Ann.Cas. 1914C, 940], all hereinbefore cited; People v. Farrell, 130 Misc. 142, 223 N.Y.S. 660; and Cooley on Taxation (4th Ed.) § 673."

Also see City Club of Milwaukee v. United States, D.C., 46 F.Supp. 673; Hassett v. Associated Hospital Service, etc., 1 Cir., 125 F.2d 611; Scripps Memorial Hospital v. California Employment Comm., 24 Cal.2d 669, 151 P.2d 109, 155 A.L.R. 360.

■ We are committed to a liberal construction of such statutes. Temple Lodge v. Tierney, supra.

■ The English Statute of Charitable Uses is in force in this state. Its preamble has been frequently referred to by the courts as showing purposes that are charitable, though it was not intended to be complete. Courts generally hold that any purpose is charitable which is within one of the types stated in the preamble, or that is analogous thereto. These are as follows:

"The relief of aged, impotent and poor people; the maintenance of maimed and sick soldiers and mariners; the support of schools of learning, free schools, and scholars of universities; repairs of bridges, ports, havens, causeways, churches, seabanks, and highways, education and preferment of orphans; the relief, stock, and maintenance of houses of correction; marriage of poor maids; aid and help of young tradesmen, handicraftsmen, and persons decayed; relief or redemption of prisoners and captives; aid of poor inhabitants concerning payments of fifteenths, setting out of soldiers, and other taxes." Stat. 43 Eliz. c. 4, (1601).

It is said that "the tendency of the courts through the centuries which have elapsed since the enactment of the statute has been gradually to enlarge the scope of charitable purposes with the result that the purposes enumerated in the statute include only a few of those which are now regarded as charitable." Scott on Trusts, Sec. 368.1. Also see 4 Pomeroy's Equity Jurisprudence, 4th Ed., Sec. 1020 et seq., and Restatement of the Law of Trusts, Sec. 368.

■ A definition frequently approved is that of Mr. Justice Gray in Jackson v. Phillips, 14 Allen, Mass., 539, as follows:

"A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government."

See cases cited to the text of 10 A.J. "Charities" Sec. 3; and 14 C.J.S., Chari-

ties, § 1, wherein, after quoting the definition of Justice Gray, it is said:

"While usually the word 'charity' implies a gift in some form, in its widest sense it denotes all the good affections which men ought to bear toward one another, and in that sense it embraces what is generally understood by benevolence, philanthropy, and good will. In its more restricted and common sense it means relief or alms to the poor. Neither of these meanings is precisely descriptive, however, of the sense in which the courts use the term in applying the law relating to charities; in the legal sense it has a much wider significance than in common speech, it is not confined to mere almsgiving or the relief of poverty and distress, but extends to the improvement and promotion of the happiness of man."

That no part of the earnings of appellee inures to the benefit of any private shareholder or individual, is not questioned.

But it is strenuously argued that appellee is not organized and operated exclusively for charitable purposes. The income of appellee is approximately $8000 per annum, about half of which is spent for charities, as the word is used in a popular sense; that is for assisting the poor, donations to Boy Scouts and other charitable work. Of the $25,000 spent in the last six years only $750 thereof was dispensed to appellee's members or their families. From this the trial court could reasonably infer that no material distinction was made between the needy public and the needy members of the order and their families. Substantially all of the activities of appellee which gave pleasure to its members were charged for. The annual dues, initiation fees and other like charges approximated $1600 per annum. The sources of the remainder of the income were an annual celebration, card games, slot machines, and the operation of a bar where liquors, tobacco and cigars were sold to members and invitees at about the prices prevailing at other bars in the city of Santa Fe.

It is stated that out of these funds there is furnished free to members a bowling alley and a reading room with magazines and papers for the use of its members, and there is an occasional dance at the lodge home for members and their families, for which no charge is made. The money so expended is negligible, amounting to about $50 per annum. The district judge was warranted in concluding that these amusements and activities were themselves conducive to attendance and thereby helped to produce the funds which were expended for public charity.

The appellee's expenditures, other than charitable gifts, include payment on its funded building debt and interest thereon, grand lodge dues and expenses of a representative thereto, salaries of its employees, and such incidental expenses as repairs, stationery, telephone, light, fuel and water, furniture and fixtures, etc, aggregating

$4000 annually. An examination of these expenditures satisfies us that they are necessary for carrying on the activities of the lodge, each of which considered broadly, has its part in the production of the funds used to carry on its charitable work. It is necessary to have the home sufficiently attractive to secure membership and the attendance of members. If, for instance, there was not a reading room, bar, card tables, billiards, etc. (for substantially all of which a charge is made) there would, it may be inferred, be less attendance and no funds for charity, notwithstanding the members find some pleasure in playing cards, drinking, reading and other entertainment furnished. It is the means by which the funds for appellee's charitable donations are obtained.

The fact that $4000 per annum is spent for the operation of the lodge and its activities is immaterial. Hospitals are held to be charitable institutions if no person receives any income therefrom, notwithstanding charges are made for the care of the sick, and also for the erection of buildings, their upkeep, and other necessary expenses incurred in their operation.

In Temple Lodge v. Tierney, supra, we cited with approval Salt Lake Lodge No. 5, B. P. O. E. v. Groesbeck, 40 Utah 1, 120 P. 192, Ann.Cas.1914C, 940, the general reasoning in which we now approve. That case was very similar to the instant one. And see Ancient & Accepted Scottish Rite of Free Masonry v. Board of County Com'rs, 122 Neb. 586, 241 N.W. 93, 81 A.L.R. 1166.

The subject of each of the following decisions was whether an Elk Lodge was such an organization for exclusive charitable purposes that it was exempt from taxation, and in each case it was held that it was not, to-wit: B. P. O. E. Lodge No. 151 v. Houston, Tex.Civ.App., 44 S.W.2d 488; Boston Lodge No. 10, B. P. O. E. v. Boston, 217 Mass. 176, 104 N.E. 453; Trustees of Green Bay Lodge, No. 259, B. P. O. E. v. Green Bay, 122 Wis. 452, 100 N.W. 837, 106 Am.St.Rep. 984; St. Louis Lodge No. 9, B. P. O. E. v. Koeln, Collector, 262 Mo. 444, 171 S.W. 329, L.R.A. 1915C, 694, Ann.Cas.1916E, 784; Benevolent Ass'n of Elks v. Wintersmith, Tax Com'r, 204 Ky. 20, 263 S.W. 670.

In these cases the facts, and in most cases the statutes, were different, which were factors considered in the decision. Also, in each of these cases the court followed the rule of strict construction of the applicable statute.

Without considering specific cases further, we call attention to the following cases and appended annotations, which cover the question: People ex rel. Baldwin v. Jessamine Withers Home, 312 Ill. 136, 143 N.E. 414, 34 A.L.R. 628; Bistline v. Bassett, 47 Idaho 66, 272 P. 696, 62 A.L.R. 323; People v. First Nat. Bank, 364 Ill. 262, 4 N.E.2d 378, 108 A.L.R. 277; Board of County Com'rs v. Denver & Rio Grande, etc., Ass'n, 70 Colo. 592, 203 P.

850, 22 A.L.R. 902; People ex rel. Nelson v. Rockford, etc., Ass'n, 348 Ill. 567, 181 N.E. 428, 83 A.L.R. 768; Scottish Rite Bldg. Co. v. Lancaster County, 106 Neb. 95, 182 N.W. 574, 17 A.L.R. 1020; Ancient & A. S. R. of Free Masonry v. Lancaster County, supra; Tillinghast v. Council, etc., of Boy Scouts of America, 47 R.I. 406, 133 A. 662, 46 A.L.R. 823; Tharpe v. Central Georgia Council of Boy Scouts of America, 185 Ga. 810, 196 S.E. 762, 116 A.L.R. 373.

We cannot say that the district court erred in his inference that the appellee was organized and operated exclusively for charitable purposes.

Questions regarding the admission of evidence were raised which we do not find it necessary to decide, as the stipulated facts are full and complete.

As we stated in Temple Lodge v. Tierney, supra, and Albuquerque Lodge, No. 461, B. P. O. E., v. Tierney, 39 N.M. 135, 42 P.2d 206, 210:

"We confine our decision to the facts before us, not making it a precedent even for other cases involving properties of the B. P. O. E. except as the proven facts disclose a use similar to that here shown. It is the use of property, not the declared objects and purposes of its owner, which determines the right to exemption."

The judgment of the district court should be affirmed, and it is so ordered.

MABRY, C. J., and SADLER, BICKLEY, and LUJAN, JJ., concur.