**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-029**

**Filing Date: January 11, 2013**

**Docket No. 30,865**

**PECOS RIVER OPEN SPACES, INC.,**
**a New Mexico non-profit corporation,**

**Plaintiff-Appellee,**

**v.**

**COUNTY OF SAN MIGUEL and**
**SAN MIGUEL COUNTY ASSESSOR,**

**Defendants-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Eugenio S. Mathis, District Judge**

Rothstein, Donatelli, Hughes,
Dahlstrom, Schoenburg & Bienvenu, LLP
Richard W. Hughes
Santa Fe, NM

for Appellee

Jesus L. Lopez, San Miguel County Attorney
Las Vegas, NM

for Appellants

**OPINION**

**HANISEE, Judge.**

**{1}**     This case presents us with an issue of first impression as to whether, as a matter of law, conservation of property can constitute a charitable use, thereby exempting the land from property taxes under Article VIII, Section 3 of the New Mexico Constitution. We conclude that conservation is a charitable use under Article VIII, Section 3 if conservation of the particular land at issue provides a substantial benefit to the public. We affirm the district court's order that the land at issue is exempt from taxation under Article VIII,

1

Section 3.

## I. BACKGROUND

**{2}** Pecos River Open Spaces, Inc. (Plaintiff) is a New Mexico non-profit corporation that has the primary and sole purpose of acquiring and holding vacant, undeveloped, and unimproved land located in the vicinity of the Pecos River Canyon in San Miguel County. Plaintiff's objective in acquiring land is to preserve it in its natural state and thereby contribute to the preservation of the environment and ecology of the Pecos River Canyon for the benefit of New Mexico and its citizens.

**{3}** In October 2008, Genevieve Coonly deeded a completely vacant and undeveloped sixty-acre parcel of land (the Property) located in the Pecos River Canyon to Plaintiff. The Property, which exists in a generally natural and undisturbed state about a quarter mile from the Pecos River, is subject to a strict conservation easement granted to the Santa Fe Conservation Trust. The easement prevents, in perpetuity, development or construction of any kind on the Property. Plaintiff's intention in acquiring and holding the Property is exclusively to preserve the Property in its natural state, to enforce and adhere to the terms of the conservation easement, and to take seasonable steps to enhance the natural qualities of the Property, such as reduction of erosion and the repair of damage to the Property.

**{4}** Upon receiving a tax assessment on the property, Plaintiff filed a protest, claiming that the Property was tax exempt under Article VIII, Section 3 of the New Mexico Constitution because it was used solely for the charitable purpose of conservation. The San Miguel Assessor (Defendant) denied the claim for the tax exemption, and Plaintiff appealed to the San Miguel County Valuation Protests Board (the Board). The Board affirmed Defendant's decision to deny the claimed exemption, concluding that conservation was not a charitable use of the Property. Plaintiff then appealed to the district court, which reversed the Board's decision and granted the charitable-use property tax exemption.

**{5}** Also in reversing, the district court accounted for the aforementioned facts, as well as the Board's findings, which noted that the Secretary of New Mexico Energy, Minerals, and Natural Resources Department determined that the Property is an important habitat area or contains significant natural, open space, or historic resources under the New Mexico Land Conservation Incentives Act, NMSA 1978, §§ 75-9-1 to -6 (2003). Because of the Secretary's finding in 2008, Coonly was given a credit for the donation on her income taxes under NMSA 1978, § 7-2-18.10 (2007) equal to fifty percent of the fair market value of the Property.

**{6}** Defendant now petitions for review of the district court's reversal. We granted the petition for writ of certiorari because this case involves a significant question of constitutional law and an issue of substantial public interest. *See* Rule 12-505(D)(2)(d) NMRA (listing the four grounds upon which this Court has discretion to grant a petition for a writ of certiorari); *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003-

2

NMSC-005, ¶ 16, 133 N.M. 97, 61 P.3d 806 (2002) ("The critical issue under Rule[] . . . 12-505 is whether the case presents issues of significant importance to justify the granting of a writ of certiorari, and that determination is not dependent on the standard of review applied [] below, nor does it limit the standard of review [applied] on appeal.").

## II. DISCUSSION

{7}     The sole issue we address is whether conservation of the Property is a charitable use, justifying exemption of the Property from taxation under Article VIII, Section 3 of the New Mexico Constitution.  Article VIII, Section 3 provides for a number of exemptions from taxation, stating:

> The property of the United States, the state and all counties, towns, cities and school districts and other municipal corporations, public libraries, community ditches and all laterals thereof, all church property not used for commercial purposes, all property used for educational or *charitable purposes*, all cemeteries not used or held for private or corporate profit and all bonds of the state of New Mexico, and of the counties, municipalities and districts thereof shall be *exempt* from taxation.

(Emphasis added.)  Although this Court and the New Mexico Supreme Court have addressed the applicability of several of the uses that qualify property for an exemption, neither has addressed the question regarding conservation posed by Defendant's appeal.

{8}     We review constitutional issues of law de novo. *Jicarilla Apache Nation v. Rodarte*, 2004-NMSC-035, ¶ 23, 136 N.M. 630, 103 P.3d 554.  "We interpret the Constitution and determine whether the law was properly applied to the facts through de novo review." *Georgia O'Keeffe Museum v. Cnty. of Santa Fe*, 2003-NMCA-003, ¶ 27, 133 N.M. 297, 62 P.3d 754.  We note that "[p]roperty is presumed to be subject to taxation.  It is the taxpayer's burden to claim, apply for, and prove an exemption based on [a] . . . charitable use." *Id.* ¶ 32 (citation omitted).  The determination of whether the land is used for a charitable purpose "necessarily depend[s] on the uses being made of each property which it is claimed comes within the exemption.  Except to the extent that the facts as to use are so nearly alike as to logically compel like results, no case can be said to constitute a controlling precedent for another case in this area." *Benevolent & Protective Order of Elks, Lodge No. 461 v. N.M. Prop. Appraisal Dep't*, 83 N.M. 445, 446, 493 P.2d 411, 412 (1972).  The standard for designating a use as charitable "can take shape only by the gradual process of adjudicating this or that purpose or use on the one side of it or on the other[.]" *Temple Lodge No. 6, A.F. & A.M. v. Tierney*, 37 N.M. 178, 187, 20 P.2d 280, 284-85 (1933).

{9}     In interpreting Article VIII, Section 3, we "apply a common sense construction rooted in the view that property used primarily and substantially for charitable . . . purposes in a manner that benefits the public is exempt." *Georgia O'Keeffe Museum*, 2003-NMCA-003, ¶ 44; *Ret. Ranch, Inc. v. Curry Cnty. Valuation Protest Bd.*, 89 N.M. 42,

3

44, 546 P.2d 1199, 1201 (Ct. App. 1976) ("Although our constitutional provision does not require property to be used exclusively for charitable purposes in order to come within the exemption, the uses for these purposes must be substantial and must be the primary uses made of the property." (internal quotation marks and citation omitted)). "The purpose of th[e Article VIII, Section 3] exemption is to encourage religious, charitable, scientific, literary, and educational associations not operating for the profit of any private shareholder or individual." *Santa Fe Lodge No. 460 v. Emp't Sec. Comm'n*, 49 N.M. 149, 153, 159 P.2d 312, 314-15 (1945) (internal quotation marks and citation omitted). "The exemption granted educational and charitable institutions proceeds upon the theory of the public good accomplished by them and the peculiar benefits derived by the public in general from their conduct." *Grand Lodge of Ancient & Accepted Masons of N.M. v. Taxation & Revenue Dep't* (*Grand Lodge*), 106 N.M. 179, 181-82, 740 P.2d 1163, 1166-67 (Ct. App. 1987). The word "charity" "in the legal sense . . . has a much wider significance than in common speech, it is not confined to mere almsgiving or the relief of poverty and distress, but extends to the improvement and promotion of the happiness of man." *Mountain View Homes, Inc. v. State Tax Comm'n*, 77 N.M. 649, 654, 427 P.2d 13, 16-17 (1967).

**{10}** But, because "[p]roperty which is exempt from taxation does not share in the burden of [paying for] the cost of government . . . in exchange for its exempt status, such property must confer a substitute substantial benefit on the public." *Grand Lodge*, 106 N.M. at 182, 740 P.2d at 1167. A "substantial public benefit" means "[a] benefit of real worth and importance to an indefinite class of persons who are a part of the public, which benefit comes to these persons from the use of property." *NRA Special Contribution Fund v. Bd. of Cnty. Comm'rs*, 92 N.M. 541, 549, 591 P.2d 672, 680 (Ct. App. 1978). The "direct and immediate use of the property" rather than the "remote and consequential benefit derived from its use" is determinative of the plaintiff's exemption claim. *Id.* at 546, 549, 591 P.2d at 677, 680.

**{11}** There can be little question that conservation of land in its natural and undeveloped state generally benefits the public in the context of environmental preservation and beautification of the State of New Mexico. The substantial benefit derived from conservation is manifested in New Mexico's strong public policy encouraging conservation. The New Mexico Legislature has enacted the Land Conservation Incentives Act, to incentivize and reward acts of conservation. Section 75-9-2 states that:

> The purpose of the Land Conservation Incentives Act . . . is to encourage private landowners to be stewards of lands that are important habitat areas or contain significant natural, open space[,] and historic resources by providing private landowners with incentives that encourage the protection of private lands for open space, natural resources, biodiversity conservation, outdoor recreation, farmland and forest land preservation, historic preservation[,] and land conservation purposes.

In fact, as noted by the district court, under Section 7-2-18.10, landowners, who convey their

4

land for the purpose of open space, conservation, or preservation to a public or private conservation agency, which is eligible to hold the land for conservation or preservation purposes, receive credit for such donations on their state income taxes.

**{12}**    Additionally, San Miguel County itself has a goal of conservation within its borders. San Miguel County's Comprehensive Plan, adopted in 2004, states that the county residents' wish list includes having "Open Land, Aesthetics[,] and Views Protected." It also states that the San Miguel County residents want to incentivize preservation through "Conservation Easements [and] Transfer and Purchase of Development Rights." The Plan explains that the residents wish to "Keep the Pecos River Wild and Scenic."

**{13}**    Based upon these policies, we conclude that conservation as asserted by Plaintiff in these proceedings is a charitable use, insofar as the conservation of the particular land at issue provides a substantial benefit to the public. We note that Defendant does not disagree with this proposition. In its brief, Defendant acknowledges that "[n]o one can reasonably dispute that the conservation of open space is a laudable, worthy[,] and commendable endeavor[] and that land so conserved has a beneficial and salutary effect on both humanity and the environment."

**{14}**    Here, the Board adopted Plaintiff's proposed findings of fact in their entirety. We note the following pertinent findings of the Board, which were subsequently adopted also by the district court.

> b.    The primary charitable purpose of [Plaintiff] is to acquire and hold vacant, undeveloped and unimproved land located in the vicinity of the Pecos River Canyon in San Miguel County, for the purpose of preserving such land in its natural state and thereby contributing to the preservation of the environment and ecology of the Pecos River Canyon, for the benefit of New Mexico and her citizens.

> c.    The Property . . . is completely vacant and undeveloped, and except for perimeter fencing and a primitive road it contains no improvements and is in a generally natural, undisturbed state.

> d.    The property is situated in the Pecos River Canyon and is approximately one-quarter mile from the Pecos River itself.

> . . . .

> f.    [Plaintiff's] intention in acquiring and holding the Property is solely to preserve the Property in its natural state, to enforce and respect the terms of the conservation easement granted with respect to the Property, and to take reasonable steps to enhance the natural qualities of the Property, consistent with [Plaintiff's] purposes and within the

terms of the conservation easement, such as reducing erosion and repairing other damage to the Property, and in addition to acquire and preserve other vacant, undeveloped tracts in the same vicinity so as to maximize the amount of protected, undisturbed land for natural habitat and open space.

g.     The Secretary of the New Mexico Department of Energy, Minerals and Natural Resources has determined that the Property is an important habitat area or contains significant natural, open space or historic resources, under the provisions of the New Mexico Land Conservation Incentives Act, [Sections] 75-9-1 through 75-9-6.

**{15}**   The Board's adoption of Plaintiff's proposed findings of fact demonstrates that it agrees that conservation confers a substantial public benefit. Nevertheless, the Board concluded as a matter of law that our prior jurisprudence did not "permit a finding that pure conservation constitutes a charitable use of [the P]roperty." On appeal to the district court, relying exclusively on the factual findings of the Board, the district court reached an opposite legal conclusion, namely, that owing to the public benefit derived therefrom, conservation of the Property in this case constitutes a "charitable purpose" and therefore qualifies the Property for a constitutional tax exemption under Article VIII, Section 3.

**{16}**   We agree that the Board's findings support a determination that conservation of this particular parcel confers a substantial benefit to the public. Given the land's proximity to the Pecos River, the natural and undisturbed quality of the land, Plaintiff's objective to preserve the land in its natural state, San Miguel County's public policy for conservation of the Pecos River, and the land's significance as an important habitat area or as an area containing significant natural, open space, or historic resources, we conclude conservation of this parcel contributes to environmental preservation and beautification of San Miguel County and the State of New Mexico. Thus, this use provides a benefit of real worth and importance to the public. It is also noteworthy that the Secretary of the New Mexico Energy, Minerals, and Natural Resources Department permitted Coonly to claim credit for the donation of the Property to Plaintiff on her income taxes in accordance with Section 7-2-18.10.

**{17}**   In light of our holding today, we additionally emphasize that the exemption from property taxes pursuant to Article VIII, Section 3 in this context is not applicable to routine activity or inactivity summarily denoted to be "conservation," but which benefits only the owner or a limited number of people or interested parties. Nor is every act of conservation of a parcel or piece of property inherently suitable to be classified as substantially beneficial to the public, and thus charitable. Such determinations entail inquiries and determinations of fact by the county boards that consider valuation protests in New Mexico.

**{18}**   In reaching our holding, we reject Defendant's specific arguments relating to the Property. Defendant initially maintains that "conservation of open space for sound

6

environmental reasons and for the enjoyment of those who may choose to gaze upon it" does not constitute a charitable purpose because conservation of the Property does not meet the "charitable purpose" requirement of conferring a substantial benefit upon the public. Defendant adds that the "environmental benefit intended by the conservation of the land is but a remote and consequential benefit derived from its use as a conserved open space but such use does not constitute a direct and immediate use of the [P]roperty for a charitable purpose." (Internal quotation marks omitted.) Defendant's arguments misapply our pre-existing Article VIII, Section 3 jurisprudence.

{19}    Relying on *Grace, Inc. v. Board of County Commissioners*, 97 N.M. 260, 261, 639 P.2d 69, 70 (Ct. App. 1981), and *NRA Special Contribution Fund*, 92 N.M. at 545, 591 P.2d at 676, Defendant contends that "the charitable purpose exemption should [not] be allowed for land that is idle, unimproved and not in actual use . . . or for which there is no direct and immediate charitable use, and for which the claimed environmental benefit—even if construed to be a charitable purpose—is, at best, remote and consequential." Defendant's reliance on these two cases is unpersuasive in the context here because both *Grace, Inc.*, 97 N.M. at 261, 639 P.2d at 70, and *NRA Special Contribution Fund*, 92 N.M. at 545, 591 P.2d at 676, deal specifically with plaintiffs seeking property tax exemptions for religious or educational uses which are of a category verifiable only by affirmative observation.

{20}    In *Grace, Inc.*, a non-profit corporation, which was owned by a church and had the sole purpose of acquiring and holding land on which future churches would be constructed, was denied a tax exemption for a vacant lot that it owned within the state. 97 N.M. at 260-61, 639 P.2d at 69-70. The corporation appealed, arguing that the Article VIII, Section 3 exemption applied because the lot was church property not used for commercial purposes. *Id.* This Court concluded that "church property" within Article VIII, Section 3 meant "property required for the use of the church." *Id.* at 260, 639 P.2d at 69. Since the vacant lot was not in use by the church, it could not be covered by the exemption. *Id.* at 261-62, 639 P.2d at 70-71. The rationale behind the holding in *Grace, Inc.* does not apply to the case before us. In *Grace Inc.*, we considered prior cases and concluded that the determination of whether a parcel was "church property" depended not on mere ownership by a church, but rather "affirmative, active, non-taxable use" by the church. *Id.* at 261, 639 P.2d at 70. Under this interpretation of "use," to qualify a parcel as church property inherently requires some church activity to be conducted on the property. *Id.* Unlike conservation, church use requires more than non-use. To apply the meaning of use for church property to the case at bar, as Defendant proposes, takes the holding in *Grace, Inc.* out of context.

{21}    In *NRA Special Contribution Fund*, 92 N.M. at 545, 591 P.2d at 676, this Court reviewed the denial of tax exempt status under Article VIII, Section 3 to the National Rifle Association of America's (NRA) 36,300-acre ranch, on which it claimed to provide educational services. The NRA argued that it provided survival training, outdoor education, and firearm training on the ranch that qualified the property for the exemption. *Id.* at 543-45, 591 P.2d at 674-76. In concluding that we lacked sufficient evidence to determine if the land was actually being used for educational purposes, we noted that much of the large ranch was

completely undeveloped and "unused for any immediate or future purpose." *Id.* at 550, 591 P.2d at 681. We concluded that, "because of its present unsuitability to the actual activities of the use of the land, [such unused parts of the property] will not qualify for tax exemption in the absence of legislation." *Id.* at 551, 591 P.2d at 682. The rationale behind this conclusion is that inherent in "educational use" is the need for some educational activity to occur on the land and a proper determination that the land be suitable for such educational activities. We held that "[l]and must be an integral part of a use for educational purposes." *Id.* at 550, 591 P.2d at 681 (internal quotation marks and citation omitted).

{22} Thus, the interpretation of "use" in *NRA Special Contribution Fund* is also inapplicable to our analysis of conservation. The fact that the land is unoccupied and unimproved in the present case does not have the similar effect of disqualifying the property from the Article VIII, Section 3 tax exemption. Whether the property is in use is completely dependent upon what the proposed use is. And, we cannot expect "use" to be characterized in the same way for different kinds of exemptions. The evidence required to show that the Property is being used for purposes of conservation for the substantial benefit of the public is very different from the proof needed to show that a given property is used for religious or educational purposes.

{23} Defendant appears to contend that by not specifically performing activities on the Property, Plaintiff cannot claim a charitable use. In making this claim, Defendant ignores the fact that the way conservation benefits the public is through maintaining the Property for the public's benefit in its natural, pristine state without any particular human activities or construction. Our holding is consistent with *Grace, Inc.* and *NRA Special Contribution Fund* in that we require both (1) the land to be suitable for conservation and (2) the activities performed on the land to be consistent with conservation.

{24} Moreover, application of the standards advanced in *Grace, Inc.* and *NRA Special Contribution Fund* to the facts of this case demonstrates that our holding is consistent with those cases. Having concluded that conservation can be a charitable purpose, *Grace, Inc.* and *NRA Special Contribution Fund* guide us to consider (1) whether the Property is being directly, immediately, primarily, and substantially used for conservation, and (2) whether that use of the property is promoting the object or purpose of conservation. *See Grace, Inc.*, 97 N.M. at 260-61, 639 P.2d at 69-70 (explaining that property owned by church must be "direct[ly] and immediate[ly]" used "to promote the object or purpose of the church" (internal quotation marks and citations omitted)); *NRA Special Contribution Fund*, 92 N.M. at 548, 591 P.2d at 679 (explaining that "used for educational purposes" entails the "direct, immediate, primary[,] and substantial" purpose of systematic instruction that confers a substantial benefit on the public (internal quotation marks omitted)). Here, the facts found by the Board and the district court and set out earlier in this Opinion satisfy both aspects of that inquiry and there is no evidence in the record to suggest that any portion of the Property was, at any time relevant to this appeal, used for any purpose other than its stated charitable purpose of conservation.

8

**{25}** In sum, owing to the substantial public benefit derived from conservation of the Property, conservation in this case constitutes a charitable purpose that qualifies the Property for a tax exemption under Article VIII, Section 3 of the New Mexico Constitution. Our holding in this regard is consistent with the legal principles that have been applied in past cases considering eligibility for tax exemption under our Constitution. Defendant provides no persuasive basis for a contrary holding. Accordingly, we see no basis for reversal of the district court's order.

## III. CONCLUSION

**{26}** For the reasons stated above, we affirm the district court.

**{27}** **IT IS SO ORDERED.**

_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**MICHAEL E. VIGIL, Judge**

**Topic Index for _Pecos River Open Spaces, Inc. v. Cnty. of San Miguel_, No. 30,865**

**APPEAL AND ERROR**
Standard of Review

**ASSOCIATIONS AND SOCIETIES**
Charitable Organizations
Non-Profit Corporations

**CONSTITUTIONAL LAW**
New Mexico Constitution, General

**TAXATION**
Exemptions
Property Tax

9