### University of Vermont and State Agricultural College v. Town of Essex and Town of Colchester

[285 A.2d 728]

No. 177-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 7, 1971

*Latham & Eastman,* Burlington, for Plaintiffs.

*Kolvoord & Overton,* Essex Junction for Appellant Town of Essex.

*Wick, Dinse & Allen,* Burlington, for Appellant Town of Colchester.

**Smith, J.** The University of Vermont and State Agricultural College, hereinafter termed UVM, brought separate actions for declaratory judgment against the defendant towns seeking a determination of a continuing dispute between UVM and the towns, on whether or not the towns were entitled to be paid property taxes assessed against real property of UVM located in the respective towns. After hearings on the consolidated actions, the Chancellor below made findings of fact and entered judgment orders and decrees adjudging that the property of the plaintiff, UVM, was exempt from taxation in each of the respective towns. The defendant towns have taken their appeal here from the judgment orders and decrees and to certain findings of fact filed below.

The plaintiff, as an instrumentality of the State of Vermont, provides facilities for, and instruction in, higher education in the City of Burlington, Vermont. The land, which is the subject of this controversy was the former Fort Ethan Allen, once the property of the United States Government, and was

acquired by UVM at no cost from the Federal government in 1964, after the discontinuance of the military facility there. This property is located in the two defendant towns, and is located some six miles from the main campus of UVM in Burlington.

After this property was acquired, UVM renovated and restored the former officer's quarters, most of which are large brick houses, to make them suitable for housing facilities. In addition to the seventy-four residences thereon, there is also a very large open area, the former parade ground, now used by the occupants of the various houses as a recreational area.

It is the claim of UVM that these properties are exempt from taxation under the provisions of No. 66 Public Acts of 1955, § 7, which reads as follows:

> "Real and personal property now held or owned or hereinafter acquired by the University of Vermont and State Agricultural College for educational purposes shall be exempt from taxation."

Before we turn to the question presented, which is whether the properties owned by UVM in the defendant towns is used for educational purposes, and would thus be exempt from taxation under the above statute, we must first consider various of the findings of fact made below.

Without objection, the Chancellor found that prior to the acquisition of this property the plaintiff had no housing facilities that were available to or for its faculty members. Also found was that these various properties were used only as residences, and not for teaching or instructional purposes. While the properties have never been used for commercial purposes, they have been occupied at times by graduate or advanced degree students.

Occupancy of the housing units by plaintiff's personnel is limited from three to four years under recent restrictions. However, other tenants have occupied some of the residences for much longer periods, having been tenants before the present restrictions were adopted. The rents charged for such premises by UVM are approximately sixty per cent of those received for comparable property in the Chittenden County area.

Also found, without objection, is that the defendant towns furnished the occupants of these properties the same kind and type of services they supply other citizens of their towns, and the cost of these services exceeds the sum of Thirteen Thousand Dollars paid each town by the plaintiff in lieu of taxes. These annual payments are based on the number of school children making use of defendants' school facilities.

The various premises, according to the undisputed findings, have been at various times occupied by a housing director, an athletic coach, practicing physicians and television managers.

In considering the findings of the Chancellor, to which exception has been briefed, we must determine if such findings are supported by the evidence in the case, having in mind that the trier of the fact is given the sole determination as to the weight of the evidence, the credibility of the witnesses and the persuasive effect of the testimony. *State* v. *Pecor*, 127 Vt. 401, 403, 250 A. 736 (1969).

We do not think we need burden this opinion with a full recital of all the findings of fact excepted to by the defendants. The essence of Findings 4, 17 and 18, to which defendants object, is that the housing in question was acquired by the plaintiff as an aid to obtaining and retaining qualified personnel. Further, that the plaintiff had difficulty in locating and employing competent and qualified teaching personnel without the inducements of housing. Such finding was supported by the testimony of Melvin Dyson, Vice-President of Financial Affairs at UVM, and was not disputed.

In the same manner we can dispose of the exceptions of the defendants to Findings Nos. 9, 13 and 15, all of which have to do with the determination of the Chancellor that there is a housing shortage in the Burlington area, which findings are supported by evidence in the case.

In Finding 16, the Chancellor found:

"In some instances the plaintiff takes into consideration its low rental housing in fixing salaries paid its employees."

We find no evidence in the record before us to support this finding and the objection of the defendants is sustained. We also find that the Chancellor was in error in the second sentence of Finding 19, in which he states:

"The reduced rentals do not defray the operating expense."

Such finding does not seem to be supported by the testimony of Mr. Dyson who testified that the debt owed by UVM for the repairs to the property had been reduced over the years, which would indicate that from its rentals UVM did require receipts over and above the operating expenses. Defendants also except to Finding 20 in which the Chancellor stated that the sum of $13,000.00 was paid to the defendant towns by UVM "in lieu of taxes." Such was the testimony of the witness for the plaintiff although a witness for the defendants testified that such payments were credited by the towns as payments on taxes due.

However, the main objections of the defendants are to Findings 22, 23 and 24, which findings also present to this Court the real question before it. Because of their importance, we quote such findings in full:

"22. The Chancellor finds the properties involved here were acquired by, and are being used for educational purposes by the plaintiff within the meaning and interpretation of Section 15[7] of No. 66 of the Public Acts of 1955.

23. The Chancellor finds the property here in question is exempt from taxation by the defendant towns.

24. The question or issue here is a close one, but in viewing the overall situation with field glasses rather than a microscope, as we have, we think we must find and hold the property to be exempt from taxation by the defendants."

Such findings are conclusions of law on the part of the Chancellor, based upon the Findings of Fact, and the correctness of such conclusions is presented to us.

There can be no doubt that No. 66, § 7 of the Acts of 1955 is a tax exemption law. The key phrase in the Act is "for educational purposes", for it is only to property held by UVM for such purposes that the tax exemption is granted. The plaintiff has cited us many decisions from other jurisdictions in which it has been held that sections of the law, such as the one presented here, should be construed liberally. This rule, claims the plaintiff, should be particularly applicable in the

present case in light of the strictly monetary advantages of UVM to the community and the charitable and semi-public function of education in general. *Burris* v. *Tower Hill School Ass'n.*, 36 Del. 577, 179 Atl. 397 (1935) ; *Pingry Corp.* v. *School Ass'n*, 86 N.J. Super. 437, 207 A.2d 194 (1965) ; *People* v. *University of Illinois Foundation*, 388 Ill. 363, 58 N.E.2d 33, 38 (1944). However, plaintiff does admit that all tax exemption statutes should be construed strictly against the party claiming the exemption under Vermont case law.

In this jurisdiction a long line of cases, starting with *In Re Hickok's Estate*, 78 Vt. 259, 62 A. 724 (1906), and extending to *International Living* v. *Brattleboro*, 127 Vt. 41, 45, 238 A.2d 782 (1968), has established the rule that in construing statutes of exemption from taxation they are to be construed most strongly against those who claim the benefit.

We are concerned here with an educational exemption statute as we were in the case of *International Living* v. *Brattleboro, supra*. In that case, we held that it was the use of the property that must govern our decision, 127 Vt. at 51. In the case of *Gifford Hospital* v. *Randolph*, 119 Vt. 66, 72, 118 A.2d 480 (1955), the question was whether a clinic building, occupied by physicians who practiced in the hospital but maintained their private offices as well in the clinic building, was exempt from taxation as being used for "public, pious or charitable uses." The Court held:

> "As applied to real estate, certainly the direct and immediate use of the property itself is meant, and not the remote and consequential benefit derived from its use."

In the most recent case involving the question before us, *Shelburne Museum, Inc.* v. *Town of Shelburne*, 129 Vt. 341, 278 A.2d 719, 721 (1971), we said:

> "To achieve exempt status, the property must confer a benefit upon that segment of the public which the institution was designed to serve. The governing consideration is the direct and immediate benefit derived from the use of the property, rather than the remote or incidental benefit produced by its primary function." (Citations omitted.)

In the instant case, the question posed is whether the residences owned and leased by UVM in the so-called Fort Ethan Allen area are used for educational purposes. Under the decisions above quoted, the use of such buildings must serve the primary purpose of serving educational purposes, and not serve such purposes as merely in a remote and consequential manner.

No finding has been made that any of the UVM-owned buildings in the two defendants' towns are used for classroom purposes. None of the buildings are used for faculty or other meetings held in connection with the administration in UVM affairs, such as was the house of the principal at Phillips Exeter Academy. *Trustees of Phillips Exeter Academy*, 90 N.H. 472, 27 A.2d 569, 592 (1940). In that case the New Hampshire court held that because the home of the principal was used for such "Seminary use", for that reason declared it not to be taxable, although refusing such exemption to other buildings owned by the Academy used for a Faculty Club as well as an unused alumni hall.

The facts here are unlike those presented to this Court in *Troy Academy* v. *Town of Poultney*, 115 Vt. 480, 66 A.2d 2 (1949), where the compensation of faculty members was figured on the basis of whether board and room was furnished. In the instant case, no claim is made that the rental of the Fort Ethan Allen houses to faculty members or others connected with the University, is included as part of the compensation of such occupants.

The facts here are that at least one of the residences is leased to the head of another educational institution. Others are occupied by doctors and other professional people, who, in addition to teaching at UVM, conduct private practices in their profession, athletic coaches and people connected with the educational television system. Some of the tenants in these residences were leased the premises they occupy upon coming to instruct at UVM from other communities. Other tenants, however, had already been living in the Burlington area before being granted leases in the residences they occupy.

Again, we must emphasize that the Chancellor found that the property "has not been used by the plaintiff for classroom occupancy or teaching or for instructional purposes."

It cannot be doubted that the ability of the University to offer living quarters to its personnel at a cost of only 60 to 80 per cent of the usual cost of similar residences on the local housing market may well be an attraction to those UVM seeks to employ, and even an incentive to such persons to seek employment with UVM, although the record here does not disclose any instance where such ability has furnished such an incentive to UVM personnel.

In *Shelburne Museum, Inc.* v. *Town of Shelburne, supra,* this Court had for consideration the tax exempt status of a dwelling, owned by the Museum, and occupied by a landscaper, whose occupancy was rent free as part of his compensation as an employee of the Museum. The Court found that such residency on the Museum grounds was both convenient to the employee and the employer. But, it was stated that the advantage derived by the plaintiff from the use of this dwelling for its employee was collateral to the historical and educational purposes for which the institution was founded, and was beyond the scope of the exemption afforded by the statute.

On the facts before us, while there is undoubtedly a great advantage to those members of the personnel of UVM in occupying the low rental housing leased from the University, such residency is not even as convenient to UVM as was the residency of the landscaper on the grounds of the Museum to that institution, for the reason that such residences are at some miles distant from the University campus.

There is nothing in the findings, or the record, before us to demonstrate that the residential property owned by the plaintiff in the defendant towns, as used, is primarily devoted to the educational purposes of UVM. Such property does not directly serve the educational purposes to which UVM is dedicated, but only confers a remote or incidental benefit on the plaintiff. *Gifford Memorial Hospital* v. *Town of Randolph, supra,* 119 Vt. at 72.

*The declaratory decrees that the properties of the plaintiff located in the towns of Colchester and Essex are exempt from taxation by such towns are reversed. Cause remanded for the entry of new decrees as directed, without costs to either or any of the parties.*