# University of Vermont and State Agricultural College v. City of Burlington

[300 A.2d 528]

No. 147-71

Present: Shangraw, C.J., Barney, Smith and Keyser, JJ., and Underwood, Supr. J.

Opinion Filed February 6, 1973

*Stephen S. Blodgett, Esq.,* of *Latham, Eastman & Telzlaff,* Burlington, for Plaintiff.

*Joseph E. McNeil,* City Attorney, and *Michael W. Wool,* Assistant City Attorney, for Defendant.

**Shangraw, C.J.** Pursuant to authority granted by its ordinances, the City of Burlington prohibits the construction of any building or part thereof within the city until a plan of the proposed site and work, together with a statement of the materials to be used has been furnished to the building inspector. If the building plan and proposed materials are in conformity with the building code, the inspector, upon payment of the requisite fee, issues a building permit for the proposed construction. Likewise, the Burlington ordinances prohibit the installation of any wiring or equipment for the transmission or distribution of electricity within any building until a permit is procured from the wiring inspector. If the plans submitted demonstrate that the work to be done is in accordance with the National Electric Code, and the permit fee is paid, a wiring permit is issued.

During the year 1969, the University of Vermont and State Agricultural College paid the City of Burlington fees covering building permits and wiring permits amounting to $7,355.90. In each instance the fees were paid under protest.

On October 14, 1969, the University of Vermont and State Agricultural College filed its petition for a declaratory judgment requesting an order that it thenceforth be exempt from the payment of such permit fees on the grounds of its sovereign immunity, and its use of the premises for governmental purposes. Plaintiff further requested such other and further relief in the premises as the nature of the case required.

On August 25, 1971, an order was issued denying the requested relief. The declaratory judgment order decreed that the University of Vermont and State Agricultural College, an instrumentality of the state for providing public higher education with all the rights and powers incident to corporations, was not exempt from the requirement of securing and paying for building and electrical permits in accordance with the provisions of the applicable ordinances of the City of Burlington. The University of Vermont and State Agricultural College has appealed to this Court for review.

The powers granted to the University of Vermont and State Agricultural College by the State, as an instrumentality of the State for providing higher education, have their origin in a charter granted by the General Assembly on November 2, 1791. By virtue of this charter the University of Vermont was founded as the twenty-fifth college in the United States.

The purpose behind the founding of the University was expressed in the preamble to the charter where it is stated in part:

> "Where the education of youth is necessary for the advancement of morality, virtue and happiness, to promote which, establishments for seminaries and colleges have ever been patronized by all good governments." The Laws of Vermont of a Public and Permanent Nature Coming Down To and Including the Year 1824, at 581 (Slade 1825).

During the next few years there was considerable delay in the opening of the University, in spite of the fact, in 1792, preparatory steps had been taken to secure donations, select the site and to erect a public building. It was not until 1800 that a president was elected and building commenced. J. Wheeler, *Historical Discourse* 9–11 (1854).

The General Assembly amended the charter in 1802 when it clarified the right and authority of the University to lease, rent, and appropriate to its use and benefit such lands as had been granted and reserved to the University by the state. Acts of 1802, Ch. 95. By a subsequent amendment approved in an act passed on November 2, 1810, these rights were confirmed to the University forever. Acts of 1819, Ch. 83. See *University of Vermont and State Agricultural College* v. *Ward*, 104 Vt. 239, 245, 158 A. 773 (1932); accord *Jones* v. *Vermont Asbestos Corporation*, 108 Vt. 79, 89, 182 A. 291 (1936).

On July 2, 1862, the "Morrill Act", 12 Stat. 503 (1862), 7 U.S.C. §§ 301–308 (1970), was signed into law by President Lincoln. This piece of legislation was first proposed by Senator Justin S. Morrill of Vermont and through it federal lands were appropriated to the several states for the purpose of establishing colleges of agriculture and mechanic arts. J. Lindsay, *Tradition Looks Forward*, 222–23 (1954).

The provisions of the Morrill Act were accepted by the General Assembly by means of Joint Resolution No. 46 and Act No. 17 of the 1862 session. However, no action was taken to set up the institution the Morrill Act envisioned until when by No. 60 of the Acts of 1863 the General Assembly authorized the incorporation of the three colleges in existence, namely, The University of Vermont, Middlebury College and Norwich University, so they could become united for the purpose of accepting the benefits of the Morrill Act if their respective Boards of Trustees authorized such unification. Acts of 1863, No. 60, § 3.

Because the Board of Trustees of Middlebury College and Norwich University decided not to accept the provisions contained within No. 60 of the Acts of 1863, the Act was repealed by the General Assembly the following year. Acts

of 1864, No. 97. The General Assembly then passed No. 96 of the Acts of 1864 which established the Vermont Agricultural College to fulfill the requirements found in the Morrill Act. Among the powers granted to the Vermont Agricultural College in the Act was that empowering it to purchase, erect and keep in repair such houses and other buildings as the trustees shall judge necessary for the college. Acts of 1864, No. 96, § 2. One condition attached to the validation of the charter was that $100,000 be raised by private subscribers for the endowment of the college. Acts of 1864, No. 96, § 10.

Having found it difficult to raise the necessary subscription, the Trustees of the Vermont Agricultural College proposed a merger with the University of Vermont. This merger was accomplished through the passage of No. 83 of the Acts of 1865 which brought into existence a body corporate by the name of the "University of Vermont and State Agricultural College." It is pursuant to the provisions of this act and the later amendments thereto that all the privileges and powers of the University of Vermont and State Agricultural College have their source. Under the provisions of the act authority was given to the Board of Trustees to use, control, sell, or dispose of all the real estate and personal property belonging to the University of Vermont at the time of the merger. Acts of 1865, No. 83, § 4. All property acquired by the University of Vermont and State Agricultural College after the merger was made subject to all the conditions, immunities and exemptions pertaining to the property held by the University of Vermont at the time of the merger. Acts of 1865, No. 83, § 12. Further provision was also made for the repeal of all the provisions in No. 96 of the Acts of 1864 which were inconsistent with this Act. Acts of 1865, No. 83, § 13.

In No. 66 of the Public Acts of 1955, the General Assembly amended No. 83 of the Acts of 1865 to further define the relationship between the University of Vermont and State Agricultural College, and the State of Vermont. See generally *University of Vermont and State Agricultural College* v. *Town of Essex*, 129 Vt. 607, 285 A.2d 728 (1971). Section 1 of No. 66 of the Public Acts of 1955 amended section 1 of No. 83 of the Acts of 1865 to read as follows:

"Sec. 1. The University of Vermont and Vermont State Agricultural College, with such other corporations as may hereafter become united therewith, are hereby united and constituted a body corporate by the name of the 'University of Vermont and State Agricultural College' for the purpose of carrying out the objects contemplated in their respective charters, and as such, shall be and remain a body corporate forever, and as such may hold and convey real and personal estate, have a common seal, and shall be recognized and utilized as an instrumentality of the state for providing public higher education with all the rights and powers incident to corporations; and the general assembly of the state of Vermont shall, from time to time, appropriate such sums as it deems necessary for the support and maintenance of such corporation."

Through the amendment to Section 1 the General Assembly added to the charter that part of the section which provides ". . . and shall be recognized and utilized as an instrumentality of the state for providing public higher education. . . ." Section 5 of No. 66 of the Public Acts of 1955 was added to the charter and it states:

"Nothing in this act shall be construed to bring the University of Vermont and State Agricultural College within the provisions of Chapters 27, 28, 31, 188, 440 and 446 of the Vermont Statutes, Revision of 1947, as amended, provided, however, that Chapter 440 shall apply, when so provided by the legislature, with respect to any university building constructed with state funds."

Chapter 440 of the Revision of 1947 is now found in 29 V.S.A. Chapter 5 which is entitled "State Buildings Division". This chapter sets forth the powers and duties of the State Buildings Division, pursuant to which, it is made apparent that the state buildings director has complete authority over the construction and repair of all state-owned buildings with the exception of those enumerated in 29 V.S.A. § 152(9), unless such excepted buildings are placed under the supervision of the state buildings director by executive order of the

governor. The buildings used by the University of Vermont and State Agricultural College, as an instrumentality of the state for providing higher education are not within such exceptions. Thus, under 29 V.S.A. Chapter 5 it is clear that the legislature has retained the authority to make the University of Vermont and State Agricultural College subject to the control and supervision of the state buildings director with respect to any building constructed with state funds.

The trial court below recognized the fact that the University does not fall within the purview of 29 V.S.A. Chapter 5 except when so provided by the legislature. However, nowhere within the agreed statement of facts or the findings of facts is there any reference as to whether the buildings for which the University paid the permit fees were state-owned and repaired or constructed with state funds.

Because of the failure to find one of the foregoing contingencies there exists a shortage of findings, and until the foregoing issue is resolved by the Chancellor a declaration of the rights of the parties cannot be properly made. *In re Application of Quechee Lakes Corp.*, 130 Vt. 469, 296 A.2d 190, 192 (1972).

*Reversed and remanded.*