591 P.2d 672

**NRA SPECIAL CONTRIBUTION FUND, Plaintiff-Appellee,**

v.

**BOARD OF COUNTY COMMISSION-ERS, Defendant-Appellant,**

and

**State of New Mexico ex rel. Property Tax Department, Defendant-Intervenor-Appellant.**

**No. 3222.**

Court of Appeals of New Mexico.

Sept. 12, 1978.

Writ of Certiorari Quashed Jan. 24, 1979.

Paul A. Kastler, Kastler, Erwin & Davidson, Raton, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Plaintiff, an arm of the National Rifle Association of America, brought suit for a refund of 1976 property taxes paid and to have its real estate exempt from taxation under Article VIII, § 3 of New Mexico's Constitution. Judgment was entered for plaintiff and defendants appeal. We reverse.

The trial court made the following pertinent findings of fact:

1. The NRA Special Contribution Fund is a Trust and nonprofit association organized by adoption of a constitution and by-laws on April 2, 1973. The said Trust was established for charitable, educational and scientific purposes under Section 501C–3 [§ 501(c)(3)] of the Internal Revenue Code of 1954, as amended, and received designation and approval as a Section 501C–3 [§ 501(c)(3)] organization on April 30, 1974.

\* \* \* \* \* \*

6. The real estate, equipment and personal property which is the subject matter of the assessment for ad valorem taxes in Colfax County for the year 1976, was used, at all pertinent times, by the Plaintiff for:

(a) Teaching of survival and conservation schools, camps and training, to the general public, with instruction provided by Wilderness Institutes, universities, U.S. Soil Conservation Service, State Game and Fish Departments, National Park Services, and other professional instructors.

(b) Outdoor education leadership workshops under sponsorship of universities, for credit hours, open to college level teachers of the general public.

(c) Training of national guard units within the State of New Mexico for firearms training, and maneuver areas.

Toney Anaya, Atty. Gen., John C. Cook, Asst. Atty. Gen., Santa Fe, for defendant-intervenor-appellant.

William H. Darden, Asst. Dist. Atty., Raton, for defendant-appellant.

(d) Archeological and historic tours, re-enactments, and participation, with special emphasis on history of the Santa Fe Trail, and primitive skills.

(e) Law enforcement training by colleges, and other professional organizations such as the Federal Bureau of Investigation.

(f) Group training sessions for law enforcement organizations, including the New Mexico State Police, area police, and the New Mexico State Game and Fish Department.

(g) Approved metallic silhouette shoots and trainings, and competition training for black powder shoots, all open to the public.

(h) Miscellaneous other educational purposes.

7. The operations of the said properties are supported by contributions made nation wide and solicited for the specific purposes of the properties use in Colfax County, New Mexico, and the revenue earned from the events on the property is substantially less than the costs and operational expenses involved.

\* \* \* \* \* \*

9. The uses of the property for the purposes hereinabove described are substantial and primary, and the non-educational uses to which the property has been placed and is intended to be utilized, is minimal or non-existent.

\* \* \* \* \* \*

11. The Plaintiff is entitled to a refund of $1,295.07 together with interest thereon and such other relief as set forth by statute for 1976 ad valorem taxes.

Defendants challenged findings Nos. 6, 9 and 11.

The sole issue on this appeal is whether plaintiff's property is "used for educational purposes."

Article VIII, § 3 reads in pertinent part: [A]ll property used for educational . . purposes . . . shall be exempt from taxation.

Section 72–29–3(B), N.M.S.A.1953 (Repl. Vol. 10, pt. 2, 1975 Supp.) of the Property Tax Code provides that property exempt under the state constitution is not subject to valuation for property taxation purposes.

*Facts*

Plaintiff's trust owns 36,300 acres of land in Colfax County, purchased by the national organization and deeded to plaintiff. In the deed of conveyance there was no provision or limitation as to the use or purpose for which the land could be used. Plaintiff claimed all of its property was exempt and did not specify any specific acreage that was exempt nor furnish any evidence of such exempt acreage.

There is no capital stock issued, no dividends are declared, no pecuniary return is derived by trust beneficiaries from any of its operations, nor are there guaranteed benefits of any kind. Its revenues are derived almost entirely from contributions made nationally from thousands of individuals interested in promoting the educational, scientific and charitable goals of the trust.

The only witness to testify was the managing director of the NRA, National Range and Outdoor Center, who explained the various activities of plaintiff.

In a survival leadership training school students from all over the country are taught both in the classroom and through field experience the basic techniques of human survival in a wilderness situation. In 1976 there were four survival schools, each one week in length.

A youth conservation training camp is a work-learning experience for students 16 to 18 years of age who are taught the basic principles of resource management.

At a Julian Smith Outdoor Leadership Workshop, secondary school teachers and community college teachers spend a week at the NRA facilities and can earn two hours credit from the University of New Mexico. Over one half of the property is utilized during this workshop.

Basic shooting skills, techniques, and safety skills were taught in the firearm safety school.

Trinidad State Junior College of Trinidad, Colorado sponsored an archeological and historical tour to explain the Santa Fe Trail. This activity lasted one hour total. The premises were also used for a Santa Fe Trail Mountain Men Rendezvous which involved people from all walks of life who sought to recreate the techniques, skills and the aroma of the mountain men of the 1840's. One such event is held each year. In 1976, 45 participated; in 1977, 70 participated.

NRA plans for and is building an outdoor center.

During the year 1976, the property was used by national guard units along with local guard units for firearms qualification training. The property was used for educational courses in law enforcement by the F.B.I. for a two-day course, by the Trinidad State Junior College that has a special program of police training in which it offers an associate degree in the police service. It was also used by the New Mexico State Police, by the New Mexico Game and Fish Department and by New Mexico Mounted Patrol. These entities used the property for regional black powder shoots, formalized target shooting, public service programs, metallic silhouette shoots for the public, and national hunting and fishing day for conservation.

In 1976, although there were 2,700 applicants, five persons hunted turkey and thirteen persons hunted elk, and were recommended by the New Mexico Game and Fish Department.

In 1975, the year before, firearm training was the primary and substantial use of the property. In 1976, there were 266 user days for university or college seminars. By "user day" is meant the number of persons that were present in conjunction with a college credit course or seminar operated by a recognized institution of higher learning that participated in some or all of one-day use of property of the Outdoor Center.

There are no full-time teachers. There are two part-time teachers, and two full-time employees.

Plaintiff is exempt from federal income tax under § 501(c)(3) of the Internal Revenue Code. This section exempts from taxation "Corporations . . . organized and operated exclusively for . . . charitable, scientific . . . or educational purposes . . . no part of the net earnings of which inures to the benefit of any private shareholder or individual . . . ." 26 U.S.C.A., Internal Revenue Code, § 501(c)(3) (1977 Pocket Part).

A. *Meaning of "used for educational purposes."*

The Constitution, the Property Tax Code and New Mexico opinions do not define what is meant by "used for educational purposes." As a result, the Legislature has seen fit to allow the courts to establish the standards under which property may be determined to be tax exempt when "used for educational purposes." We are confronted with the phrase that has broad significance. Its meaning is a matter of first impression in New Mexico.

Nearly 50 years ago, Mr. Justice Watson posed the difficulty of the problem in *Temple Lodge No. 6, A. F. & A. M. v. Tierney*, 37 N.M. 178, 20 P.2d 280 (1933). The property of a Masonic lodge was held charitable. In the course of the opinion, Justice Watson said:

The broad expression "used for educational or charitable purposes" necessarily imposes upon the courts a severe task of interpretation. It is easy to instance purposes clearly within it. It is not difficult to suggest instances which would reduce to absurdity a rule too liberal. Appellees (Tierney, treasurer and collector of Bernalillo County) point out that the ordinary home is customarily used for educational purposes and often for charitable purposes. In a broad sense, a golf professional, a riding master, or a boxing instructor, is engaged in education. Charity may "cover a multitude of sins." The line of demarcation cannot be projected.

*It can take shape only by the gradual process of adjudicating this or that purpose or use on the one side of it or on the other*, or by change in the constitutional criteria. [37 N.M. at 187, 20 P.2d at 284, 285.] [Emphasis added.]

For almost half a century, our courts have followed the dictates of *strict construction, Berger, et ux. v. University of New Mexico, et al.*, 28 N.M. 666, 217 P. 245 (1923); *Peisker v. Unemployment Compensation Commission*, 45 N.M. 307, 115 P.2d 62 (1941); *McKee v. Bureau of Revenue*, 63 N.M. 185, 315 P.2d 832 (1957), *questionable strict construction, Temple Lodge No. 6 A. F. & A. M., supra, liberal construction, Santa Fe Lodge No. 460 v. Employment Security Com'n*, 49 N.M. 149, 159 P.2d 312 (1945); *Laughlin v. Lumbert*, 68 N.M. 351, 362 P.2d 507 (1961), *reasonable and practical construction, Church of the Holy Faith v. State Tax Commission*, 39 N.M. 403, 48 P.2d 777 (1935), *reasonable but narrow construction, Evco v. Jones*, 81 N.M. 724, 472 P.2d 987 (Ct.App.1970), and *reasonable construction, Benevolent & P. Ord. of Elks v. New Mexico Prop. A. D.*, 83 N.M. 445, 493 P.2d 411 (1972).

These various rules of statutory construction leave us in a quandary when applying a statute or constitutional provision to the facts of a particular case. Thus far it has been held that an alumni association of a university fraternity is not exempt from taxation. *Albuquerque Alumnae Ass'n v. Tierney*, 37 N.M. 156, 20 P.2d 267 (1933). Masonic property is exempt, *Temple Lodge, supra.* An Elks Lodge is exempt, *Santa Fe Lodge No. 460, supra,* and is not exempt, *Benevolent and Protective Order of Elks, supra. United Veterans Organization* is not exempt. *United Veterans Org. v. New Mexico Prop. App. Dept.*, 84 N.M. 114, 500 P.2d 199 (Ct.App.1972). A nonprofit corporation's property used for low rent housing for low income families is not exempt. *Mountain View Homes, Inc. v. State Tax Commission*, 77 N.M. 649, 427 P.2d 13 (1967). A church-affiliated nonprofit corporation operating a nursing home for the aged and sick is exempt. *Retirement Ranch, Inc. v. Curry Cty. Val. Protest Bd.*, 89 N.M. 42, 546 P.2d 1199 (Ct.App.1976).

Therefore, we are left with the task of determining the reasonable construction of the phrase "used for educational purposes."

■ *First*, we must keep in mind that it is the direct and immediate use of the property that must govern our decision, and not the remote and consequential benefit derived from its use. *University of Vermont v. Town of Essex*, 129 Vt. 607, 285 A.2d 728 (1971).

*Second*, "The term 'educational' is comprehensive, embracing mental, moral and physical education." *Application of Syracuse University*, 59 Misc.2d 684, 300 N.Y. S.2d 129, 135 (1969). "It has often been stated that 'education is a broad and comprehensive term,' and the word 'educational' as used in the statute must be taken in its broad sense." *Faculty-Student Ass'n of Harpur Col. v. Dawson*, 57 Misc.2d 112, 292 N.Y.S.2d 216, 227 (1967). When used in its broad sense, education is whatever we learn by observation, by conversation, or by other means, away from what has been implanted by notice. "This Court well recognizes that matters of education are not restricted to academic curricula or to ivy covered halls." *State Bd. of Tax Com'rs v. Fort Wayne Sport Club, Inc.*, 147 Ind.App. 129, 258 N.E.2d 874, 881 (1970).

Curtiss, *Tax Exemption of Educational Property in New York*, 52 Cornell L.Q. 551, 562 (1966–67) says:

> . . . "Educational" contemplates both instruction and research. It covers informal as well as formal instruction. And it includes not only the more traditional educational institutions ranging from nursery schools through colleges and universities, but also organizations devoted to such activities as educational television programs and community theater productions.

To define what is an educational purpose, we turn to *McKee v. Evans*, 490 P.2d 1226 (Alaska 1971). The sole question presented for review was whether the property owned by the Apprentice and Manpower Training

Trust Fund, a management trust, was exempt from taxation on the ground that it was "used *exclusively* for nonprofit * * educational purposes." [Emphasis added.]

The property was used in conjunction with an apprenticeship training program consisting of five and one-half months formal training at the school, three years of apprenticeship or on-the-job training, and a briefer refresher course again at the school. The formal training consisted of lectures and demonstrations on the theory and practice of electrical work, and was somewhat similar to courses offered in state-supported high schools and colleges.

The court was aware of the accepted canon of strict construction. In holding the property exempt, the court said:

We hold that the phrase "educational purposes" as used in Article IX, Section 4 of the Alaska Constitution and AS 29.10.-336(a) *includes systematic instruction in any and all branches of learning from which a substantial public benefit is derived.* [490 P.2d at 1230.] [Emphasis added.]

By a note to this rule, the court said:

We do not say that in all contexts this definition will be of easy application, or even conclusive. However, further refinement is best left to future cases.

The Alaskan rule fixes a standard for the establishment of an "educational purpose." It has also been held that *"methodical instruction given . . . in physical and cultural development* and its continuous pursuit of those objects as desirable ends are far different from the mere pursuit of social activity for its own sake and *may properly be regarded as 'educational.'"* [Emphasis added.] *Bohemian Gymnastic Ass'n Sokol of City of N. Y. v. Higgins*, 147 F.2d 774, 776 (2d Cir. 1945).

■ *McKee v. Evans, supra*, rejects the quid pro quo policy as the rationale for allowing educational institutions tax exempt status; the educational institution seeking tax exemption need not prove it is supplying an educational benefit which the state would normally provide its citizens.

The court in *McKee* noted that the Alaskan statute and constitutional provision in question did not limit "educational purposes" in this manner even though a restrictive definition would be a legislative concern at this point in time when there is "a proliferation of new kinds of educational institutions, and rapidly changing concepts of mass education." [490 P.2d at 1230.] We agree with *McKee* on this point and hold that what can be found to be an educational purpose is not restricted by the educational resources provided by the state to its citizens. But it does recognize that public education provided by an entity is a "Substantial public benefit." To grant an exemption, should we search for a program of instruction parallel to that offered in public supported educational institutions? We believe not as to length of time.

■ To qualify plaintiff for exemption of any of its land, the period of time of its systematic instruction, as used in the Management Trust in *McKee v. Evans, supra*, is not necessary. If a portion of plaintiff's land is primarily and substantially devoted to educational purposes, "notwithstanding that the period of its instruction is very short, that the subjects taught are confined to a narrow field, and that its purpose is utilitarian to the last degree, it is educational within the scope of that term as employed in the constitutional provision under consideration." *Lawrence Business College v. Bussing*, 117 Kan. 436, 231 P. 1039, 1040 (1925). But when the facts of the case show that the educational function is merely incidental to its activities in pursuance of educational purposes, exemption may be denied. *National Foundation of Health, Welfare & Pension Plans, Inc. v. City of Brookfield*, 65 Wis.2d 263, 222 N.W.2d 608 (1974).

In contrast with the Alaskan provisions, Article VIII, § 3 of the New Mexico Constitution does not provide that exempt property should be "exclusively" used for educational purposes. If a portion of plaintiff's land is primarily and substantially devoted to educational purposes, "notwithstanding that the period of its instruction is very short, that the subjects taught are confined

to a narrow field, and that its purpose is utilitarian to the last degree," it is educational within the scope of the term as employed in the constitutional provision under consideration. *Lawrence Business College, supra.* See also *Benevolent & Protective Order of Elks, supra.* But when the facts of the case show that the educational function is merely incidental to its activities in pursuance of educational purposes, exemption may be denied. *National Foundation, etc., supra.*

■ In summary, we hold the phrase "used for educational purposes" to mean "the direct, immediate, primary and substantial use of property that embraces systematic instruction in any and all branches of learning from which a substantial public benefit is derived."

To complete the definition, we must determine what is meant by "a substantial public benefit."

The theory advanced for most types of exemptions from taxation is said to be that the exempt institution serves some worthy purpose, religious, charitable, educational or governmental; or that it furthers the public welfare in some special way. "[O]ne of the reasons for the exemption of certain classes of property from taxation is that the state is to receive some benefit by reason of such exemption." *Berger, supra* [28 N.M. at 668, 217 P. at 246].

■ We note in passing that the general property tax remains the backbone of local taxation in New Mexico. Article VIII, § 1 of the New Mexico Constitution provides that "taxes shall be equal and uniform upon subjects of taxation of the same class." The rationale for this provision is that all property should bear its share of the cost of government. Property which is exempt from taxation does not share in the burden. Therefore, in exchange for its exempt status, such property must confer a substitute substantial benefit on the public.

We note also that the necessary expenses of government are becoming greater and the necessity for better utilization of the existent property tax is urgent. Tax exemption has a direct effect on the size of the tax base. The scope of tax exemption has broadened so that exempt organizations tend to grow wealthier and often increase the percentage of exempt property within the state first granting the exemption. Such increased exemptions may create a serious problem because a diminished tax base lessens the amount available to meet governmental costs. This factor also requires an organization that seeks a tax exemption to give the public a "substantial public benefit."

Let us consider for the moment the practical result that occurs if plaintiff's 36,300 acres of land are held exempt from taxation. A large amount of taxable property would be removed from the tax rolls and be freed from its obligation to share in the expense of conducting the Colfax County government, notwithstanding the fact that it would receive all the benefits to be derived therefrom. The burden of taxation that this property would ordinarily bear would shift to the land of others who were unable to find a means of escape. *Church of the Holy Faith v. State Tax Commission, supra,* says:

"The greater the amount of property that escapes taxation, the greater the burden is upon other property holders to bear the support of the government. That alone should not deter us from [granting] . . . every immunity conferred by law, but public convenience, private justice, and individual hardship should cause us to hesitate and carefully examine the provision of law which is said to confer such privilege." [39 N.M. 415, 48 P.2d 784.]

On the other hand it has been said that "The purpose of this exemption is to *encourage* religious, charitable, scientific, literary, and *educational associations* not operating for the profit of any private shareholder or individual." *Santa Fe Lodge No. 460, supra* [49 N.M. at 153, 159 P.2d at 314-315]. [Emphasis added.]

■ These concepts that encourage and discourage the purpose of tax exemption lead courts to different results. Therefore,

we must be careful in defining "substantial public benefit."

"Substantial public benefit" has not been defined. A public benefit is a benefit conferred upon an indefinite class of persons who are a part of the public. *New York Inst. for Ed. of Blind v. Town of Wolcott*, 128 Vt. 280, 262 A.2d 451 (1970). "Substantial" is a relative term but when applied to a public benefit, as a quid pro quo for tax exemption, it means "of real worth and importance; of considerable value; valuable." *Tax Commission v. American Humane Education Soc.*, 42 Ohio App. 4, 181 N.E. 557 (1931). In *Tax Commission, supra*, the sole question presented was whether the expenditures of the Society in Ohio constituted a substantial part of its activities so as to exempt a bequest from the Ohio inheritance tax. The court described the extensive services rendered, the nature of the work performed, the percent of expenditures made and said:

> Upon consideration we cannot escape the conclusion that the expenditures made in Ohio during the past years by this association constitute a substantial part of its total expenditures and that such expenditures in Ohio are well worth having. [181 N.E. at 558.]

We note that in each case, an appellate court reviews the facts, weighs their significance and makes a determination relative to property exemption. This burden is placed on the courts because the Legislature has not defined the meaning of the phrase "used for educational purposes" nor its application to cases in which claims for tax exemption are made.

We define "Substantial Public Benefit" to mean:

> A benefit of real worth and importance to an indefinite class of persons who are a part of the public, which benefit comes to these persons from the use of property.

B. *The burden is on plaintiff to establish exemption.*

"Since liability of all real estate to taxation is the rule, with exemption the exception, the burden is placed upon the taxpayer to bring himself within the exemption statute." *Point Park Jr. Col. v. Board of P. A., A. & Rev. of A. C.*, 23 Pa.Cmwlth. 367, 351 A.2d 707 (1976).

█ The fact that plaintiff stated in its constitution that it was organized exclusively for charitable, educational, and scientific purposes, is not determinative of its claim; that its property is tax exempt as "used for educational purposes." What is determinative of its claim is the direct and immediate use of the property. *Experiment in Inter-Living v. Town of Brattleboro*, 127 Vt. 41, 238 A.2d 782 (1968); *Frank Lloyd Wright Foundation v. Town of Wyoming*, 267 Wis. 599, 66 N.W.2d 642 (1954).

Plaintiff's claim that the land was acquired for educational use in the future does not assist plaintiff in establishing an exemption. *Trustees of Protestant E. Church v. State Tax Commission*, 39 N.M. 419, 48 P.2d 786 (1935).

█ Merely because plaintiff is exempt from federal income tax under § 501(c)(3) of the Internal Revenue Code [26 U.S.C.A. Internal Revenue Code, § 501(c)(3) (1977 Pocket Part)] has no applicability to its claim that its property in Colfax County is tax exempt as used for educational purposes. *Experiment in Inter-Living, supra* [127 Vt. 41, 238 A.2d at 786].

The trial court shall not rely upon these facts in arriving at a conclusion.

█ There is one factor upon which the trial court may rely if evidence is presented on the issue. Does plaintiff engage in any promotion, propaganda and lobbying activities to influence legislation?

The Fifth Article of plaintiff's constitution reads in part:

> *No substantial part of the activities of the Fund shall be the carrying on of propaganda, or otherwise attempting, to influence legislation*, and the Fund shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of any candidate for public office. [Emphasis added.]

We hold that "The promotion, propaganda and lobbying activities implicit in the . . . [emphasized portion of Article 5] are definitely not educational." *Hazen v. National Rifle Ass'n of America*, 69 App. D.C. 339, 343, 101 F.2d 432, 436 (1943).

■ If plaintiff engages casually in these activities, then its other activities are tainted with uneducational purposes. *Acta exteriora, indicant interiora secreta* [acts indicate the intention]. If any evidence is presented of such activities, plaintiff loses its standing as an educational organization whose property is "used for educational purposes."

The trial court found that plaintiff had met its burden. The defendants, in its attack, rely primarily on *Hazen, supra*. See also, *National Rifle Ass'n v. Young*, 77 U.S. App.D.C. 290, 134 F.2d 524 (1943). NRA was incorporated under "An Act for the incorporation of Societies and Clubs, for certain social and recreative purposes . . . ." It sought to avoid an assessment for taxation of its personal property because it was a benevolent, charitable and scientific institution, rendering its property exempt from taxation. The trial court overruled Hazen's demur to NRA's answer, and Hazen appealed. The Court of Appeals reversed holding that NRA had failed to show that it came within any exemption provided by law.

NRA claimed that it was exempt under the following statute:

Property used for educational purposes that is not used for private gain shall be exempt from taxation . . . . .

The primary object of NRA stated in its certificate of incorporation was to educate the youth of the nation in marksmanship and to develop marksmanship and ranges for its members. The court said:

No one of these objects and activities is necessarily or exclusively educational in character.

\* \* \* \* \* \*

[I]t is clear, in our view, that at most the educational phase of appellee's activities is incidental and collateral to the social, recreative, promotional and propaganda phases which constitute its major reasons for existence. It does not, therefore, in any real sense relieve the government of its burden of public education. . . . [101 F.2d 435, 436.]

■ The opinion does not disclose how the NRA in *Hazen* attempted to fulfill its educational purpose; the record is void of the specified facts describing NRA's activities. Because *Hazen* was decided on the basis of the purposes for which NRA was incorporated, we cannot view it as controlling in this case. We accept the philosophical legal concepts of the opinion, but we cannot view it as applicable to a trust created for educational and charitable purposes. Burden of proof was not an issue. We hold that under the definition stated in this opinion, plaintiff has not met its burden in proving that the property they seek to have exempt from taxation is property that is "used for educational purposes." Whether plaintiff can meet this burden is a question of fact for the trial court.

C. *Plaintiff is entitled to a pro tanto exemption if supported by substantial evidence.*

Plaintiff is the owner of 36,300 acres of land in Colfax County. From the record we note that a large portion of this land is idle, unimproved, and unused for any immediate or future purpose. Land of this nature presents a special problem. Can there be a pro tanto exemption? Can the trial court determine from the evidence presented what, if any, portion of the land is used primarily for educational purposes and exempt that portion of the land from taxation, or must the trial court hold the entire land subject to taxation if most of it is not used for educational purposes?

Land must be an integral part of a "use for educational purposes." If we broaden the scope of the exemption, we accentuate the regressive nature of a property tax. The wealthy organizations will receive the greatest benefit. They will own the greatest amount of land that would otherwise be subject to taxation. "The evil of permit-

ting any class of corporations or societies to become tax exempt proprietors and landlords on a large scale is too well known." *Church of the Holy Faith, supra* [39 N.M. at 414, 48 P.2d at 783].

■ Article VIII, § 3 must be construed to free from taxation only property that is presently and actually in substantial use for educational purposes. Where the land is idle, unimproved and not in actual use, because of its present unsuitability to the actual activities of the use of the land, it will not qualify for tax exemption in the absence of legislation. The justification for requiring present use arises as a matter of public policy; it is premised on the philosophy of substantial public benefit. If a tax burden is placed on idle, unimproved, and unused land, it will create an incentive to avoid idleness and make a substantial use of the land to carry on educational purposes.

■ In the matter of pro tanto exemption a conflict of authority exists on the power to exempt *a portion of a building* or a portion of its value from taxation and the manner and circumstances under which an exemption will be made. The great weight of authority authorizes a partial exemption of a building. Annot., Exemption of part of building or part of its value from taxation, 159 A.L.R. 685 (1945).

Inasmuch as we should not discourage the use of property for educational purposes, we conclude that pro tanto exemption is a fair and just result. *Medical Cent. Hosp. of Vt., Inc. v. City of Burlington*, 131 Vt. 196, 303 A.2d 468 (1973); *Seventh Day Adv. Kan. Conf. A. v. Board of Cty. Com'rs*, 211 Kan. 683, 508 P.2d 911 (1973).

Ordinarily, the difficulty with making a pro tanto determination is that the purpose and use of property is, generally, not clear in itself and has been rendered less so by judicial laxity in borderline cases. Courts have had to flounder in a morass of strange facts and have decided both ways on almost every question. Usually courts are not careful in their analysis of tax exempt cases.

■ From a review of the record, we are unable to determine whether any of plaintiff's property is entitled to an exemption. We leave this matter with the trial court.

D. *Conclusion*

The solution to this vexatious problem rests in a new hearing before the district court. The plaintiff has presented evidence as to each of its activities. NRA may present additional evidence if it desires; it may prove the acreage, if any, involved in each activity. Defendant may present evidence concerning NRA's propaganda and lobbying activities. It may also show what portion of the property is used for educational or noneducational uses. If the court finds any property exempt from taxation, it must make a determination as to the amount of land which is subject to the exemption.

Reversed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, J., dissenting.

HERNANDEZ, Judge (dissenting).

I respectfully dissent.

Justice Oman speaking for the Supreme Court in *Benevolent & P. Ord. of Elks v. New Mexico Prop. A. D.*, 83 N.M. 445, 493 P.2d 411 (1972) resolved any prior conflicts in the guides or rules for the construction of Article VIII, § 3 of the New Mexico Constitution:

"The rule in New Mexico is that of reasonable construction, without favor or prejudice to either the taxpayer or the State, to the end that the probable intent of the provision is effectuated and the public interests to be subserved thereby are furthered."

Justice Oman also had this to say in the same opinion:

"Although our constitutional provision does not require property to be used exclusively for charitable [or educational] purposes in order to come within the ex-

**552**

emption, the uses for these purposes must be substantial and must be the primary uses made of the property."

The following definition of "educational" is a reasonable construction of that word as it is used in Article VIII, § 3, supra:

"The . . . word [educational as pertaining to education] taken in its full sense is a broad, comprehensive term and may be particularly directed to either mental, moral or physical faculties, but in its broadest and best sense it embraces them all, and includes not merely the instructions received at school, college, or university, but the whole course of training—moral, intellectual, and physical." *Ancient, Etc., S. R. of Freemasonry v. Board of Co. Com'rs.*, 122 Neb. 586, 241 N.W. 93 (1932).

Applying the holdings in *Benevolent & P. Ord. of Elks v. New Mexico Prop. A. D.*, supra, and the above definition of "educational" to the facts as found by the trial court, it is my opinion the plaintiff's property was exempt and the judgment of the trial court should be affirmed.