In this case, important constitutional issues involving the appropriation process were presented to this Court. I had hoped that the Court would resolve these issues clearly and with finality in order to give guidance and direction to our coordinate branch of government, the Legislature.
In reviewing the constitutionality of legislative enactments, this Court has consistently, over the years, recognized that the power of the Legislature is plenary except as limited by constitutions. "[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law". AlabamaState Federation of Labor v. McAdory, 246 Ala. 1, 9,18 So.2d 810, 815 (1944); see also Home Indemnity Co. v. Anders,459 So.2d 836 (Ala. 1984).
I do agree with the majority opinion that, as the ASETF is presently established, appropriations from it are earmarked for educational purposes, and that the Legislature can not unearmark that money in a general appropriation bill. While § 45 excepts revenue bills and general appropriation bills from the single-subject requirement of § 45, § 71 does put limits on what can be properly included in a general appropriation bill. In addition, there is case law on the question of what is properly included in appropriation or revenue bills. In AlabamaEducation Association v. Board of Trustees of the Univ. ofAlabama, 374 So.2d 258 (Ala. 1979), while the Court split on the question of whether the legislation at issue was a general appropriation bill or simply an appropriation bill, the entire Court agreed that only those things germane to appropriations were properly included in the legislation.[1] In Houston CountyBoard of Revenue v. Poyner, 236 Ala. 384, 182 So. 455 (1938), the Court held that only matters pertinent or germane to raising revenue were properly included in a revenue bill. InOpinion of the Justices No. 266, 381 So.2d 187 (Ala. 1980), the Court recognized that bills that provide for earmarking do not have the same general purpose as bills that make appropriations. These cases are additional support for the majority opinion's conclusion that unearmarking is not properly accomplished in a general appropriation bill. Therefore, for an item to be funded from the ASETF, the item must have an educational purpose. *Page 343 
This holding does not, however, resolve the issues presented. We should consider the meaning of the provisions of § 71 of the Constitution as they may apply in this case.
Section 71 restricts the type of appropriations that can be made in a general appropriation bill. Only appropriations for "the ordinary expenses of the executive, legislative, and judicial departments of the state, for interest on the public debt, and for the public schools" can be included in the general appropriation bill. The majority opinion seems to recognize that the appropriations at issue are for the ordinary expenses of state government[2] while implicitly recognizing that this is true notwithstanding the fact that some of them may also have an educational purpose. The trial court found that the appropriations were "intended to be for educational purposes." The majority affirms the trial court's holding that the only appropriations for educational purposes that can be made in the general appropriation bill are those for "public schools."
I disagree, provided the appropriations are for theordinary expenses of one of the three departments of our state government. To understand this disagreement, it is necessary to look at the history and purpose of § 71.
First, it should be noted that there is a scarcity of historical information with regard to the specific purpose for which § 71 was placed into the Alabama Constitution. A review of the journals of the Constitutions of 1875 and 1901 and the Alabama Constitutions in which this clause appears gives little guidance as to why this restriction was put into the Constitution. However, we do know something about the purposes of provisions similar to § 71 and its counterpart, § 45, as they are rather common provisions in numerous state constitutions. Sutherland Stat. Const., § 17.01 (4th ed 1985). Further, the history of the placement of § 71 and its counterpart, § 45, into our Constitution is also enlightening. The first two constitutions of this State, those of 1819 and 1861, contained no single-subject restriction similar to that in § 45, nor the provision of § 71 or its equivalent. The Constitution of 1865 was the first to contain a single-subject restriction such as that in § 45; see Art. IV, § 2. The single-subject requirement was designed to prevent the abuses of logrolling. Opinion of the Justices No. 326, 511 So.2d 174
(Ala. 1987). Section 45's single-subject restriction also appears in the Constitution of 1868, Art. IV, § 2. The predecessor of § 71 first appeared in the Constitution of 1875, Article IV, § 32, and was repeated in the Constitution of 1901. The history of the placement of these provisions under consideration suggests to me that the log-rolling problem initially came to light while the state operated under the 1819 and 1861 Constitutions. The framers of the Constitutions of 1865 and 1868 placed single-subject restrictions in the constitution to alleviate that problem. It probably became evident that there was an advantage in allowing more than one subject to be included in a single bill where that bill provided for the ordinary expenses of state government. It is impractical and too time-consuming to fund every agency in a separate bill. In summary, § 45 placed a restriction on the Legislature by requiring it to pass a separate bill for each subject, and § 71 was an exception to that general requirement necessary to provide for the orderly funding for state government.
With that general history in mind, we should ask the reason for the particular wording of § 71. In particular, why was the term "public schools" specifically included? Was funding for the public schools not considered to be an "ordinary expense" of state government, so that it was necessary to provide specifically for such? Or did the framers understand that funding for public education generally was within the ordinary expenses of state government, but intend to limit spending *Page 344 
for education in the general appropriation bill to only that funding for what was historically known as the "common schools." My review of historical material available does not provide any conclusive answers. T. Skinner, AlabamaConstitution Annotated (1938); 5 Financial Administration ofthe State Government of Alabama, (1932) (a report prepared by the Institute for Government Research of the Brookings Institution); M. McMillan, Constitutional Development inAlabama, 1798-1901: A Study in Politics, the Negro, andSectionalism (1978). At the time the Constitutions of 1875 and 1901 were written, there was a great deal of debate about the role of state government in providing for schools. McMillan at 206, 23640. This debate took place in the larger context of a general attempt to restrict the power of the Legislature because of the perceived abuses of past Legislatures. McMillan
at 197. Section 71 was also written in a time when public education in Alabama was being decentralized. McMillan at 207. Whereas education in the past had been directed at the state level, most control of the public schools was then being decentralized and put in the hands of the local authorities. The appellants argue that the placing of educational responsibility into the hands of local authority may have been a reason why § 71 was written as it now appears. Specifically, they argue that because local school boards were not considered to be agencies of state government (at least at that time in history), education funding could not be made through the "ordinary expenses of state government" phrase because the entities receiving those appropriations were not state agencies. While this historical evidence is enlightening, it does not conclusively answer the question presented. Therefore, it is my view that construction of § 71 should be made in light of the purposes sought to be served by that section,Sutherland Stat. Const., § 58.06 (4th ed 1984), and in light of the impact on state government the various constructions that are advanced by the parties in this case would have. "[C]onstitutions are made for practical purposes and look to practical ends, and in the construction of them we are to take into consideration the conditions which confronted the constitution-makers, and, if possible give the instrument such construction as will carry out the intention of the framers, and make it reasonable rather than absurd." Poyner,236 Ala. at 386, 182 So. at 456.
First, § 71 should be construed in a manner that allows for the efficient, orderly funding of state government. However, because it is an exception to the single-subject requirement of § 45, it should be construed in such a manner as to allow for such efficient funding, but to prevent the emasculation of § 45's general requirement. Poyner, supra. Moreover, § 71 specifically provides that "The general appropriation bill shall embrace nothing but appropriations for. . . ." (emphasis added). In addition, if it is possible, § 71 should be construed so that all operative clauses of the provision are given effect or some sphere of operation and that none be so construed as to be superfluous. Sutherland Stat. Const., § 46.06 (4th ed 1984). Section 71 states that the general appropriation bill can provide for three things, one very broad and two limited in scope: the ordinary expenses of state government, interest on the public debt, and the public schools. Therefore, at first blush it would appear that appropriations for the interest on the public debt and for the public schools were not considered to be ordinary expenses of state government or else it would have been unnecessary to specifically provide for them. However, just saying this does not answer the question as to why they were not considered to be ordinary expenses of state government. As previously noted, at least with respect to the "public schools" phrase, the appellants argue that it was because the appropriations were to go to local boards of education, which, they argue, were not considered state agencies at that time.
Appellees argue, and the majority opinion agrees, that by specifically providing for the public schools, the framers of the Constitution implicitly restricted funding for education in the general appropriation bill to only that for the public schools. *Page 345 
Such a construction is in my view, overly restrictive. We can take judicial notice of the fact that virtually every state agency has some incidental educational function. It may be no more than to provide information to the public about what the agency does, or it may have a more extensive educational function. The majority's construction of § 71 would require that no appropriation to any state agency for any "educational purpose," as that term is used in the legislation creating the ASETF, could be provided for in the general appropriation bill under the "ordinary expense" phrase. Such a construction is too restricted, because it would unduly hinder the efficient funding of state government. However, it is clear that not just any education funding can be made under § 71. In a series of cases cited in the majority opinion, we have stated that appropriations for colleges and universities could not be made in the general appropriation bill because of § 71. However, those cases dealt only with the question of whether funding for colleges and universities could be made under the "public schools" phrase of § 71. While the opinions do use very broad and sweeping language about the inability to fund colleges and universities in the general appropriation bill, the propriety for such funding was always tested under the "public schools" phrase. None of those cases involved the question of whether appropriations for educational activities of state agencies other than post-secondary educational institutions could be included in the general appropriation bill, and no case cited by any party supports the proposition that appropriations such as those involved in this case are not within the ambit of the "ordinary expenses of state government" phrase of § 71.
Given the principle that some educational activities can be funded through the "ordinary expenses of state government" phrase and, yet, that the "public schools" phrase has been consistently interpreted not to allow for the funding of colleges and universities, I believe a rational, workable distinction can be drawn between appropriations for non-traditional education that does not take place in a classroom setting and appropriations for formal traditional education. More specifically, because of our prior decisions, appropriations for schools or institutions of learning other than those that were historically known as the common schools, grades kindergarten through 12, can not be made in the general appropriation bill. However, appropriations for the ordinary expenses of state government can include appropriations that will be used for educational activities of state agencies.
If the appropriations challenged in this case are for the ordinary expenses of state government, then we should decide now the appropriate test for the Legislature to use to determine whether the activity can be funded from the ASETF. Statutes establishing this fund have merely provided that the funds "be used for educational purposes."
My research has revealed no case that has addressed the question of what kind of educational activity is properly funded from the ASETF. The Court of Appeals once defined "education" as "the process of developing and training the powers and capabilities of human beings" and noted that "[e]ducation means more than the acquisition of knowledge out of textbooks, however desirable that may be." BarbersCommission of Mobile County v. Hardeman, 31 Ala. App. 626,21 So.2d 118 (1945). "Educational purpose" has been defined in one context as:
 "Term as used in constitutional and statutory provisions exempting property so used from taxation, includes systematic instruction in any and all branches of learning from which a substantial public benefit is derived, and is not limited to such school properties as would relieve some substantial educational burden from the state."
Black's Law Dictionary 461 (5th ed 1979). In Opinion of theJustices No. 323, 512 So.2d 72 (Ala. 1987) we defined "appropriations for public education" for the purpose of § 45's single-subject requirement, by reference to what the Legislature had historically included in the education appropriation bill. Reference to contemporaneous *Page 346 
and practical interpretations is a valid tool in determining the proper construction of a statute or constitution.Sutherland Stat. Const., § 49.03 (4th ed 1984).
The difficulty of the problem was artfully expressed inTemple Lodge No. 6, A.F. A.M. v. Tierney, 37 N.M. 178, 187,20 P.2d 280, 284-85 (1933):
 "The broad expression 'used for educational or charitable purposes' necessarily imposes upon the courts a severe task of interpretation. It is easy to instance purposes clearly within it. It is not difficult to suggest instances which would reduce to absurdity a rule too liberal. Appellees point out that the ordinary home is customarily used for educational purposes and often for charitable purposes. In a broad sense, a golf professional, a riding master, or a boxing instructor, is engaged in education. Charity may 'cover a multitude of sins.' The line of demarcation cannot be projected. It can take shape only by the gradual process of adjudicating this or that purpose or use on the one side of it or on the other, or by change in the constitutional criteria. "
We should give guidance to the Legislature. I cannot agree to limit appropriations out of the ASETF in the general appropriation bill to only "the public schools." Instead, I would hold that appropriations out of the ASETF can be made to a state agency other than post-secondary institutions whose direct, immediate, and primary use of the funds embraces systematic instruction in any branch of learning from which a substantial public benefit is derived. See NRA SpecialContribution Fund v. Board of County Commissioners of ColfaxCounty, 92 N.M. 541, 591 P.2d 672 (1978).
In concluding that the appropriations in this case violate § 71, the majority must mean to say that if an appropriation is for an "educational purpose" as that term is used in the legislation creating the ASETF it can not be an "ordinary expense of state government." In my opinion, the fact that appropriations are for educational purposes simply does not exclude the appropriations, as a matter of law, from also being for the ordinary expenses of state government. Under my views in this case, I would allow appropriations for the ordinary expenses of state government to be made in the general appropriation bill funded out of the ASETF, provided the Legislature has determined them to be for "educational purposes" as that term is defined by this Court.
I would affirm the trial court's holding that appropriations from the Alabama Special Education Trust Fund must be for educational purposes, but I would reverse its holding that the only appropriations for educational purposes that can be made in a general appropriation bill are those for the "public schools." Therefore, I would remand this case for an appropriate determination of whether the appropriations to the agencies funded from the ASETF were for "educational purposes" as that phrase is defined herein.
[1] The Court was also split on the question of whether "dues check-offs" were germane to appropriations.
[2] "Ordinary expenses of state government" is shorthand for the entire phrase, because all power of the state is vested in the executive, legislative, and judicial departments, see § 42, Constitution of Alabama of 1901. If appropriations can be made to those branches, they can be made to any part of the state government.